# EXHIBIT B

VitalLaw™ 

# [Antitrust Law: An Analysis of Antitrust Principles and Their Application - Areeda and Hovenkamp, ¶706. Unreasonably Exclusionary Infringement Lawsuits and Related Enforcement Conduct](#)

Antitrust Law: An Analysis of Antitrust Principles and Their Application - Areeda and Hovenkamp
Phillip E. Areeda (late) & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶706. (4th and 5th Editions 2015-2021)
4th and 5th Editions
Antitrust Law: An Analysis of Antitrust Principles and Their Application - Areeda and Hovenkamp ¶706.

[Click to open document in a browser](#)

**Last Updated: 9/2021**

**706a. Introduction; patent obtained by fraud versus other improprieties..—**

**1. *Summary*..—**Any patent holder, including a monopolist, may challenge an infringement of its patent or other IP rights. Of course, defending the infringement suit may prove costly to the alleged infringer. Further, if the latter's product is itself the alleged infringement, the patentee acting in good faith is entitled to notify the infringer's customers. [1] Customers using infringing articles may themselves be contributory infringers [2] and may therefore require indemnification security from the infringement defendant or, if sufficiently frightened, may stop dealing altogether. Subjecting a potential or actual rival to such burdens may weaken the rival or even dissuade it from beginning or continuing its rivalry with the monopolist patentee—and perhaps without regard to the merits of the infringement claim.

As a result, suing on a patent in bad faith—for example, where the patent was wrongfully obtained or the patentee knows that the rival is not an infringer—is "exclusionary " in the §2 sense. Further, since improperly motivated litigation in this sense is a "sham, " neither is it protected by the *Noerr* doctrine. [3]

We state our conclusions as follows:

- In *Walker Process* the Supreme Court declared that an infringement lawsuit based on a patent that was acquired by "fraud " could be the basis for an infringement defendant's antitrust lawsuit against the infringement plaintiff. [4] This lawsuit most typically proceeds by way of counterclaim to the infringement suit, but the courts have also approved the submission of *Walker Process* claims in declaratory judgment actions and even in primary lawsuits filed under the Sherman Act. [5]
- In today's parlance "fraud " most typically refers to inequitable conduct by the applicant during the patent application process. But not every imperfection in a patent application process is sufficient to make a patent unenforceable. The Federal Circuit has set high standards for inequitable conduct, which require an actual intent to deceive the patent examiner and a showing of "materiality, " which means that the examiner would very likely not have issued the patent had he or she known the truth. That court has set even higher standards for establishing that a lawsuit on such a patent constitutes an antitrust violation.
- The realm of exclusionary practices regarding patent claims is broader than inequitable conduct, however, and covers any assertion of an IP right to exclude others while knowing that the IP right in question is unenforceable under the circumstances. The antitrust conduct can consist of such things as: (1) filing an infringement suit on a patent that the patentee knew or should have known was unenforceable as a result of inequitable conduct or other imperfections in the application process; (2) filing an infringement suit when the infringement plaintiff knew or should have known that the rival's technology did not infringe; (3) filing an infringement suit based on an expired patent. The §2 claim can also be based on exclusionary actions other than the filing of an infringement suit, such as threats to


The *PRE* objective standard asks mainly whether the patentee exercised reasonable care in determining the fact of infringement. Although we cannot discuss the many possibilities, a few illustrations and principles may be stated.

When the monopolist is vindicating a product patent, we can at least insist that it inspect the allegedly infringing article and draw a reasonable conclusion of infringement before filing its infringement suit or taking other actions, such as writing letters to customers, that might injure the alleged infringer's market position. [97] This restriction applies regardless of any sincere belief the monopolist might have about the impossibility of a noninfringing product in its field. [98]

The product itself may not reveal the presence or absence of an infringed process patent. In that case, the monopolist should be compelled to request a reasonable opportunity to inspect the allegedly infringing process before attacking. Once these preliminaries have occurred, we hesitate to appraise too precisely the monopolist-patentee's judgment about infringement—especially in an infringement suit where the infringement defendant might want to divert the suit from the question of infringement to the plaintiff's reasonableness in suing. The patentee should not be forced to sue at its peril. Yet, neither should its discretion be completely immune from review. Accordingly, we conclude that a monopolist-patentee's judgment in attacking an infringer may be tested for reasonableness in any appropriate suit, but the alleged infringer must overcome a presumption of reasonableness in favor of a patentee whose behavior appears reasonable on its face. We emphasize that issues concerning the legal question of infringement and the facts that constitute it are to be addressed directly under the patent laws.

**706c3. *Relation to claim construction..*—**In its *Teva Pharmaceuticals* decision, the Supreme Court held that patent claim construction based on extrinsic evidence and expert testimony is factual in nature and subject to clear error review, rather than de novo review as the Federal Circuit had previously held. Whether this change in the law will have any bearing on the "reasonableness " of a particular infringement suit is difficult to say. [99] The dissenters pointed out that in many circumstances treating claim construction as a question of fact will reduce uniformity. [100] This could operate to increase the range of reasonable infringement suits. In general, however, antitrust liability attaches only when a patent owner brings an infringement action with indifference to whether infringement has occurred or based on claims that fail to read on the accused device or process under any reasonable interpretation.

**706d. Government Guidelines..—**Guidelines issued by the Justice Department set forth the circumstances under which it will prosecute a patent infringement action as unlawful monopolization. [101] Somewhat inconsistently, those Guidelines provide that "[e]nforcement of a patent obtained by mere inequitable conduct before the Patent and Trademark Office, however, cannot be the basis of a section 2 claim, because inequitable conduct does not involve knowing and willful patent fraud," but also that "[a]n objectively baseless infringement action, brought in bad faith, when the complainant knows the intellectual property right to be invalid, may violate section 2 of the Sherman Act." [102] As indicated earlier, we believe that the second of these propositions is the more accurate statement of the law.

**706e. Antitrust challenge as compulsory or permissive counterclaim; declaratory judgment and direct action alternatives..—**

**1. *Counterclaim..*—**In most cases the antitrust challenge to an infringement action is presented as a counterclaim to the infringement suit itself. If such counterclaims are classified as "compulsory, " they must be brought as counterclaims or will be barred by principles of res judicata. If, however, the antitrust counterclaim is permissive, then failure to bring it will not preclude a subsequent and independent antitrust challenge to the infringement action. [103]

The trend is to find such counterclaims to be compulsory and thus barred if not timely brought during the pendency of the infringement suit. The Second Circuit's *Critical-Vac* decision distinguished between antitrust counterclaims to the infringement suit, which should be treated as compulsory, and claims and defenses of


patent misuse, which might be treated as permissive. [104] The Supreme Court's controversial *Mercoid* decision [105] had treated the latter as permissive, and the Second Circuit felt obliged to reconcile it with emergent doctrine holding that antitrust counterclaims to infringement actions are best regarded as compulsory. The Second Circuit reasoned:

> Antitrust claims based on patent misuse, such as the counterclaims in *Mercoid*, are likely to involve factual issues distinct from those involved in patent infringement litigation between the same parties….In contrast, antitrust claims based on patent invalidity, such as C-Vac's claims in the instant case, will generally involve the same factual issues as those involved in patent infringement litigation between the same parties…. [106]

This reasoning is not entirely persuasive. Some misuse claims raise precisely the same issues as those that arise in an antitrust claim and all necessary facts are known to the infringement defendant at the time of the infringement suit. For example, perhaps the infringement plaintiff requires the defendant to use tied, staple commodities with the patent, and its failure to do so forms the basis for the infringement claim. [107] In such cases there is no reason not to make the antitrust counterclaim compulsory. In other cases—such as when the patent is procured by fraud but the facts are not revealed until after the infringement suit has run its course—justice is poorly served by a rule that prevents a subsequent antitrust challenge. [108]

When the facts supporting the antitrust counterclaim are the same as those supporting the infringement defense, a compulsory counterclaim rule economizes on judicial resources and tends toward the efficient resolution of disputes. For example, if the defense is that the theory of infringement is legally frivolous, the patent is clearly invalid or has expired, or the defendant's technology is obviously not infringing, then many of the facts necessary to support the antitrust counterclaim are implicit in the defense itself. Other facts, such as market power or the dangerous probability of success in achieving it can be developed through discovery.

Making antitrust counterclaims compulsory is less sensible, however, when the facts needed to support the counterclaim are not sufficiently known at the time the infringement action is brought. In such cases a compulsory counterclaim rule requires the infringement defendant to bring an antitrust claim that would be treated as unfounded or even frivolous if brought through the usual process. The outcome is particularly serious if the facts needed to support the antitrust counterclaim are not known until after the filing deadline for counterclaims has passed or, worse yet, after the trial is over. [109]

As a result, some allowance must be given to an infringement defendant forced to file its antitrust counterclaim before the full facts or the full impact of any antitrust violation is known. For example, it would be perverse to hold that an antitrust claim is compulsory and thus cannot be brought later, but also that the infringement defendant lacks standing to bring the antitrust counterclaim because it has not yet perfected entry into the market. [110]

In *Destiny Tool*, the Ninth Circuit, applying Sixth Circuit law, observed that both the Fifth and Ninth Circuits "have strictly followed " the Supreme Court's decision in *Mercoid*, and concluded that antitrust counterclaims are not compulsory. [111] The court noted a division among the circuits, with some holding that such counterclaims are not compulsory as a general matter, [112] and others disagreeing. [113] The court observed that *Mercoid* was a patent misuse case with an antitrust counterclaim, [114] while *Walker Process* involved a patent infringement suit allegedly based on a fraudulently obtained patent. The broader rule adopted by the Fifth and Ninth Circuits thus rejected the compulsory restriction for all antitrust counterclaims, while the narrower rule typically held that *Walker Process* counterclaims are generally compulsory, while other types of antitrust counterclaims might not be.

© 2022 CCH Incorporated and its affiliates and licensors. All rights reserved.



The Ninth Circuit then applied the Sixth Circuit's "logical relationship " test, which considered whether "substantially the same evidence would support or refute both claims. " [115] On that basis, the court concluded that the counterclaim was compulsory.

**706e2. *"Affirmative" use of* Walker Process: *suits under Declaratory Judgment Act or direct Sherman Act suits; consumer standing..*—**A "counterclaim " naturally presupposes an underlying infringement claim to which it is attached. If the owner of an improperly obtained patent institutes enforcement actions falling short of an infringement suit, then the target's only recourse may be to institute their own action. The Declaratory Judgment Act [116] contemplates such actions, [117] and some courts have permitted a direct antitrust challenge under the Sherman Act.

For example, in *Unitherm* the patentee wrote threatening letters to numerous firms, including customers of the challenger. [118] The claimant brought a declaratory judgment action asserting *Walker Process*–like claims, and the Federal Circuit concluded that a plaintiff in the claimant's position "may bring a Declaratory Judgment Action of patent invalidity…even in the absence of overt enforcement actions." [119] The Federal Circuit observed that merely obtaining a patent whose claims conflicted with the technology of the declaratory judgment plaintiff would be insufficient to raise the type of threat of harm that the Declaratory Judgment Act contemplated. However, threatening communications, even if not directed at the claimant itself, could be sufficient. Just as the mere obtaining of a patent, with no subsequent enforcement activity, would not violate *Walker Process*, so too it would not give rise to a declaratory judgment action. [120]

In *Hydril* the Federal Circuit went one step further, holding that a firm could file a Sherman Act lawsuit directly against a patentee who had threatened the antitrust plaintiff's customers and supplier after widely publicizing its patent in the market, even though it knew that the patent was invalidated by prior art. [121] The Federal Circuit rejected the district court's conclusion that an affirmative claim would lie only if the patentee's enforcement action lay against the antitrust claimant itself, as would normally be the case in a declaratory judgment action. The court observed:

> To the extent the district court's ruling may have been based on Hydril's failure to allege threatened enforcement action against Hydril rather than against its customers, a valid *Walker Process* claim may be based upon enforcement activity directed against the plaintiff's customers. Threats of patent litigation against customers, based on a fraudulently-procured patent, with a reasonable likelihood that such threats will cause the customers to cease dealing with their supplier, is the kind of economic coercion that the antitrust laws are intended to prevent. A supplier may be equally injured if it loses its share of the market because its customers stop dealing with it than if its competitor directs its monopolistic endeavors against the supplier itself. Without customers, a supplier has no business. [122]

In *DDAVP* , the Second Circuit held that it had jurisdiction over a *Walker Process* –style antitrust claim brought by purchasers who alleged that they had paid too much for a drug because the defendant's patent infringement suit had served to delay generic entry. [123] In this case, the dispute arose under antitrust law, not patent law. The court noted that the plaintiffs had pursued their antitrust claim on four alternative theories:

> (1) [T]he defendants committed *Walker Process* fraud in obtaining and securing the ′398 patent; (2) the defendants listed the ′398 patent in the FDA's Orange Book despite knowing the patent was fraudulently procured and therefore invalid; (3) the defendants, knowing the ′398 patent was invalid, prosecuted sham patent infringement litigation against generic competitors in order to delay FDA approval of the competitors' generic DDAVP equivalent; and (4) the defendants filed a sham citizen

© 2022 CCH Incorporated and its affiliates and licensors. All rights reserved.


98  Such a rule might be thought futile because antitrust law is not likely to interfere very effectively with a patentee's propensity to sue once it goes through the motions of inspecting the allegedly infringing article. But even if some patentees sue with undetected bad faith, encouraging proper forms of conduct can beneficially influence the substance of behavior. This limited intervention, moreover, may threaten an appraisal of the patentee's judgment in suing and thereby deter some undesirable conduct.

99  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015).

100  *Id.* at 845–50 (Thomas, J., dissenting, joined by Justice Alito).

101  *See* Antitrust Guidelines for the Licensing and Acquisition of Intellectual Property §6.0 (1995), *reprinted in* 59 Fed. Reg. 41,339. These Guidelines are reprinted as Appendix C to the Supplement.

102  *Id.* §6.0.

103  *See* Federal Rule of Civil Procedure 13(a), which states in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*See* 6 Charles A. Wright et al., Federal Practice & Procedure §1417 (Civil, 3d ed. 2014); Michael D. Conway, Comment, *Narrowing the Scope of Rule 13(a),* 60 U. Chi. L. Rev. 141, 156 (1993).

On related procedural issues see *Arthrocare Corp. v. Smith & Nephew, Inc.,* 406 F.3d 1365 (Fed. Cir. 2005) (refusing to dismiss antitrust counterclaim until antitrust plaintiff could respond on baselessness issue); *Donnelly Corp. v. Reitter & Schefenacker, USA*, 2002 WL 31418042, 2002-2 Trade Cas. ¶73,817 (W.D. Mich. Aug. 13, 2002) (granting infringement plaintiff's request to bifurcate trial of infringement claim and patent counterclaim, but not to stay discovery on the counterclaim, permitting all discovery to go forward would prevent discovery disputes and facilitate settlement).

104  *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,* 233 F.3d 697 (2d Cir. 2000), *cert. denied,* 532 U.S. 1019 (2001). *See also Eon Labs, Inc. v. SmithKline Beecham Corp.,* 298 F. Supp. 2d 175 (D. Mass. 2003) (antitrust challenge to patent infringement suit is compulsory counterclaim; following *Critical-Vac* ); *Jarrow Formulas v. International Nutrition Co.,* 175 F. Supp. 2d 296 (D. Conn. 2001) (distinguishing *Critical-Vac* decision discussed in the main text: where some of the facts supporting the antitrust claim occurred after resolution of prior patent infringement suit, the antitrust claim could not be treated as a compulsory counterclaim to that prior suit). *Cf. Xerox Corp. v SCM Corp.,* 576 F.2d 1057, 1061 (3d Cir. 1978) (antitrust counterclaim not compulsory as to large antitrust suit challenging many aspects of defendant's conduct). But when the underlying claim is simply for infringement and the basic defense to the infringement action is essentially the same as the counterclaim, the latter is compulsory. *Accord Koufakis v. Carvel* , 425 F.2d 892, 898 (2d Cir. 1970); *United Artists Corp. v. Masterpiece Prods., Inc.,* 221 F.2d 213, 216 (2d Cir. 1955). *See* 6 Wright et al., Federal Practice §§1411–1412.

105  *Mercoid Corp. v. Mid-Continent Inv. Co.,* 320 U.S. 661 (1944).

106  *Critical-Vac* , 223 F.3d at 703. *See also USM Corp. v. SPS Techs., Inc.,* 102 F.R.D. 167 (N.D. Ill. 1984) (making the same distinction).

107  See ¶1781b, d.

108  For fuller treatment, see Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, & Christopher R. Leslie, Intellectual Property and Antitrust Law §5.5 (2d ed. 2010 & Supp.).

109  *See American Packaging Corp. v. Golden Valley Microwave Foods, Inc.,* 1995 WL 262522, 1995-1 Trade Cas. ¶71,009 (E.D. Pa. 1995) (infringement defendant claimed that information about fraudulent procurement of patent became available only very late in the infringement suit); *see also Hydranautics v. Filmtec Corp.,*


204 F.3d 880, 886 (9th Cir. 2000) (infringement defendant properly pled that infringement plaintiff committed perjury at infringement trial and that in absence of perjured testimony, it would have lacked probable cause to pursue infringement action).

If new facts emerge after the litigation or if the infringement plaintiff committed fraud or other misconduct, Federal Rule of Civil Procedure 60(b)(3) permits the judge to give a party relief from the judgment provided that motion is made within a reasonable time, or within one year after entry of judgment.

110 Cf. Amgen, Inc. v. F. Hoffman-La Roche LTD, 2007-1 Trade Cas. ¶75,766 (D. Mass. Mar. 30, 2007) (rival who was target of patent infringement actions had standing to assert counterclaim even though it was not yet producing in the market, where FDA approval was "imminent "—better rule here, if the infringement defendant is close enough to entry that a patent infringement suit or threat of it is forthcoming, then it has standing to maintain the antitrust action; further, expenses of litigating the patent could constitute "antitrust injury ").

111 Destiny Tool v. SGS Tools Co., 344 Fed. Appx. 320, 323, 2009 WL 2700318, 2009-2 Trade Cas. ¶76,749 (9th Cir. Aug. 27, 2009), analyzing Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 671 (1944).

112 Id., 344 Fed. Appx. at 323, citing Tank Insulation Int'l, Inc. v. Insultherm, Inc., 104 F.3d 83, 88 (5th Cir. 1997), and Hydranautics v. FilmTec Corp., 70 F.3d 533, 536–37 (9th Cir. 1995).

113 Destiny Tool, 344 Fed. Appx. at 323, citing Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 702–04 (2d Cir. 2000), and Genentech, Inc. v. Regents of the Univ. of Cal., 143 F.3d 1446, 1455–56 (Fed. Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999).

114 Destiny Tool, 344 Fed. Appx. at 323. See Christina Bohannan, IP Misuse as Foreclosure, 96 Iowa L. Rev. 475 (2011), available at http://papers.ssrn.com/sol3/papers.cfm? abstract_id=1474407.

115 Destiny Tool, 344 Fed. Appx. at 323, citing Sanders v. First Nat'l Bank & Trust Co. in Great Bend, 936 F.2d 273, 277 (6th Cir. 1991).

116 28 U.S.C. §2201. What we say here is not intended to be a comprehensive treatment of declaratory judgment actions in this legal setting. For that, see 10B Charles A. Wright et al., Federal Practice and Procedure §§2751–2759 (Civil, 3d ed. 2014).

117 See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), holding that a licensee did not need to repudiate its license agreement as a condition of having a "case or controversy " sufficient to invoke the Declaratory Judgment Act.

118 Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341 (Fed. Cir. 2004), rev'd on non-antitrust grounds, 546 U.S. 394 (2006).

119 Id., at 1358. See also Highway Equip. Co., Inc. v. Cives Corp., 476 F. Supp. 2d 1079 (N.D. Iowa 2007).

120 See, e.g., Microchip Tech. Inc. v. Chamberlain Grp., 441 F.3d 936 (Fed. Cir. 2006) (no jurisdiction under Declaratory Judgment Act when DJ plaintiff did not face reasonable apprehension of suit).

121 Hydril Co. LP v. Grant Prideco LP, 474 F.3d 1344 (Fed. Cir. 2007). Contrast Merchandising Techs., Inc. v. Telefonix, Inc., 2007-1 Trade Cas. ¶75,598 (D. Or. Feb. 7, 2007) (minimum degree of enforcement necessary to support Walker Process claim is that needed to establish actual controversy for purposes of Declaratory Judgment Act; here not even enough controversy to establish that; in fact, the patentee had simply sent out to its customers a notice of the existence of its patent).

Of course, consumers as well as competitors can bring direct actions. See Netflix Antitrust Litig., 2007-1 Trade Cas. ¶75,749 (N.D. Cal. June 14, 2007) (consumers had standing to challenge alleged Walker Process violation; ultimately deciding that the plaintiffs failed to state a claim; allegations were merely that Netflix obtained its patents fraudulently; plaintiffs could not show that any rival was actually excluded by the patents); Molecular Diagnostics Labs. v. Hoffmann-La Roche, Inc., 402 F. Supp. 2d 276, 280 (D.D.C. 2005) (purchasers have standing). Cf. DDAVP Direct Purchaser Antitrust Litig., 2007-1 Trade Cas. ¶75,726 (S.D.N.Y. Nov. 2, 2006) (odd, apparently incorrect alternative holding that direct purchasers of drug lacked standing to assert Walker Process claim alleging that defendant used improperly procured patent to keep generics off market, resulting in higher prices for its own drug; court holds that because Walker Process is