# EXHIBIT C

VitalLaw™   

# IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law - Hovenkamp, Janis, Lemley, Leslie and Carrier, § 5.05, ANTITRUST ALLEGATIONS AS COMPULSORY COUNTERCLAIMS IN ENFORCEMENT LITIGATION (RULE 13(a))

IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law - Hovenkamp, Janis, Lemley, Leslie and Carrier
Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, Christopher R. Leslie & Michael A. Carrier, IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law § 5.05 (3rd Edition, 2021 Supp. 2016)
3rd Edition, 2021 Supp.

Click to open document in a browser

**Last Updated: 11/2021**

Because intellectual property/antitrust cases generally feature complex constellations of factual and legal issues, they tend to present courts

p. 5-80

with an "unenviable task of trial management." [297] Frequently this task includes a decision as to whether antitrust counterclaims are compulsory to intellectual property claims under Rule 13, Federal Rules of Civil Procedure. As explored below, this analysis has often proven irksome. Section 5.06 addresses another issue of trial management: the court's discretion under Rule 42(b) of the Federal Rules of Civil Procedure to separate intellectual property issues from antitrust issues for trial.

## [A] Overview of Rule 13; "Logical Relationship" Test

Rule 13 of the Federal Rules of Civil Procedure establishes the distinction between compulsory and permissive counterclaims. Rule 13(a) states, in relevant part, that a pleading "must" state a counterclaim if the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.…" [298] Rule 13(b) sets forth the alternative: a pleading "may" state a counterclaim where the counterclaim is not compulsory. [299] A litigant who fails to plead a compulsory counterclaim may not raise the claim in any subsequent action. [300]

p. 5-80
p. 5-81

Courts have interpreted the language of Rule 13(a) broadly, applying a "logical relationship" standard that sweeps even multiple discrete "occurrences" within the scope of the rule if they are "logically related." [301] Courts often assess the presence of a logical relationship between claims by considering whether the claims involve many of the same factual and legal issues, or are offshoots of the same basic controversy between the parties. [302]

Courts and commentators frequently cite judicial economy as one principal rationale underlying Rule 13(a), asserting that claims arising from the same transaction or occurrence should be tried in a single action in order to avoid inefficient duplication of effort and to encourage settlement. [303] From the litigants' perspective, Rule 13(a) may limit the opportunity for harassment by multiple lawsuits. [304]

## [B] The *Mercoid* "Exception"

In *Mercoid*, [305] the Supreme Court refused to apply the compulsory counterclaim rule to bar a patent misuse counterclaim in a patent


Glitsch responded by filing a separate declaratory judgment action raising the same antitrust allegations. The trial court, refusing to countenance Glitsch's effort to make an end-run around the previous order, granted Koch summary judgment, and Glitsch appealed.

On appeal, Glitsch argued that *Mercoid* created a special exception allowing Glitsch to use the declaratory judgment action to circumvent the original order. Specifically, Glitsch maintained that *Mercoid* conferred special status on intellectual property misuse, allowing it to be used, even by way of collateral attack when rejected in an earlier action because intellectual property misuse vindicated important public policy interests.

The Federal Circuit readily disposed of this argument, but only after offering a "careful reading" of *Mercoid.* According to the Federal Circuit, a careful reading revealed that the *Mercoid* ruling

> was based on its determination that the public policy of preventing patent misuse outweighed the public policy underlying the doctrine of res judicata, *at least as applied on the facts of that case.* [371]

p. 5-97
p. 5-98

While *Mercoid* had involved "two successive coercive actions" in which Mercoid had no opportunity to raise its patent misuse defense in the first, Glitsch could have pressed its antitrust allegations in the first action, even if only by way of appeal. Accordingly, on these facts, the public policy against collateral attack outweighed any public policy in favor of special status for patent misuse declaratory judgment allegations. As the Federal Circuit summarized it:

> The reasoning of *Mercoid* makes clear that a party that did not raise the issue of patent misuse in one action may raise that issue in another action based on a separate assertion of infringement, whether as a defense against the claim of infringement or in a request for declaratory relief. But the rationale of *Mercoid* does not justify allowing a party to launch a collateral attack on a ruling in the first action, the effect of which would be to alter the judgment in that action. [372]

The summary is especially significant if it is read as accepting the *Mercoid* rule at least as applied to counterclaims styled as patent misuse allegations. Unfortunately, the court did not make any reference to the conflicting decisions on the applicability of *Mercoid.*

The Federal Circuit also dealt with the impact of the *Mercoid* exception in *U.S. Philips Corp. v. Sears & Roebuck & Co.*, [373] but the case is unlikely to be of great precedential value. In a first case, Philips sued Windmere and Izumi for patent infringement; Windmere and Izumi counterclaimed for misuse and antitrust violations. While the first case was proceeding, Philips initiated a second case against Sears and Izumi for infringement of the same patents, and Izumi sought to interpose the same antitrust counterclaims, arguing that antitrust counterclaims were permissive and that Izumi had the "absolute right to choose when and where to

p. 5-98
p. 5-99

litigate them." [374] The Federal Circuit refused to extend the *Mercoid* exception to these facts. [375]

## [6] Observations; Suggestions for Future Treatment of Antitrust Counterclaims in Patent Cases

To summarize our observations developed in the preceding subsections, we are not persuaded that the decades-long effort to apply limiting gloss to *Mercoid* has yielded suitable rules. The *Mercoid* exception should

© 2022 CCH Incorporated and its affiliates and licensors. All rights reserved.


be eliminated and antitrust and misuse counterclaims in patent cases should be subjected to the standard Rule 13 analysis, applying the "logical relationship" test. [376]

We expect that the logical relationship test will usually be satisfied, and counterclaims therefore deemed compulsory, in patent cases where the patent misuse or antitrust counterclaims are based on the patentee's actions in connection with the patent-in-suit. [377] We believe that most patent cases involving antitrust claims will fit this pattern.

Where counterclaims are designated compulsory under our approach, claimants will ordinarily be barred from filing such counterclaims in a later-filed action, or after pleading deadlines in an original action. However, this assumes that prior to the expiration of those deadlines, there existed an arguable factual or legal basis for the counterclaim. Where no such basis existed prior to the expiration of the deadlines, no bar should be raised. If the original suit is still pending when the claimant discovers the basis for the counterclaim, the court should generally allow

p. 5-99
p. 5-100

the claimant leave to amend the pleadings. If the original suit has been terminated when the claimant discovers the basis for the counterclaim, the court should generally allow the claimant to plead the counterclaim in a separate action. [378]

Courts should be wary of accepting shortcuts in applying the logical relationship test to misuse and antitrust counterclaims in patent cases. Specifically, courts should reject any bright-line rule that patent misuse claims are unrelated to patent issues for purposes of Rule 13. We reject the suggestion that patent misuse theories are generally distinct from patent validity and infringement issues. [379] Patent misuse may routinely be connected to patent infringement. For example, patent misuse theories that are based on tying allegations may require a determination as to what constitutes a staple product under 35 U.S.C. § 271(c). They may also be intertwined with the repair/reconstruction determination, which is basic to the analysis of direct infringement. [380] Patent misuse may also involve questions of validity or enforceability, as where patent misuse allegations are based upon bad faith enforcement. [381]

Courts should also reject any notion that a Rule 42(b) analysis on whether to separate patent issues from antitrust issues for trial should be determinative of the Rule 13 compulsory counterclaim issue. While it is true judicial efficiency should be taken into account in both determinations,

p. 5-100
p. 5-100.1

Rule 13 and Rule 42(b) need not operate in lock-step. [382] Indeed, we expect that thoughtful application of both rules in most patent/antitrust

p. 5-100.1
p. 5-101

cases will lead courts to declare that many antitrust counterclaims are compulsory (ensuring that the patent issues and the antitrust issues will be pled in one proceeding), but that the patent issues and the antitrust issues will be set for separate trials under Rule 42(b) as a matter of sound trial management. [383] That patent issues are sufficiently connected to antitrust issues to trigger Rule 13(a) in a given case should not mean that courts automatically lose their discretion over the management of trial in such cases. [384]

## [C] Compulsory Antitrust Counterclaims in Nonpatent Intellectual Property/ Antitrust Cases

The Rule 13(a) issue also arises in intellectual property/antitrust cases outside the patent context. Courts in these cases have generally refused to extend *Mercoid* itself, or *Mercoid*'s reasoning, beyond patent/antitrust.

## [1] Antitrust Counterclaims in Lanham Act Cases

© 2022 CCH Incorporated and its affiliates and licensors. All rights reserved.


374  *Id.* at 595.

375  *Id.* at 596 (" *Mercoid* did not hold that the same antitrust claim could be fully litigated a second time, if it were raised and litigated by a related party in the first action").

376  Under the *Nobelpharma* choice of law analysis, it would seem that the compulsory counterclaim rule for patent/antitrust cases would be decided as a matter of Federal Circuit law, understanding, of course, that the Federal Circuit is bound by Supreme Court precedent. See § 5.03[A][3].

377  For a similar view, see John J. Barnhardt III, Counterclaiming in Patent Infringement Litigation, 15 AIPLA Q.J. 175, 178 (1987) (asserting that "[i]t is likely that counterclaims directed to antitrust violations … directly involving patents on which the patentee has brought its suit … will be deemed 'compulsory'" and that the issue would be "virtually free from doubt" were it not for *Mercoid*).

378  These considerations may be particularly important in cases involving *Walker Process* or sham litigation counterclaims. See § 11.03[B][6][a]. In *Ragner Techn. Corp. v. Berardi*, 2018 WL 6804486 (D.N.J. Dec. 27, 2018), the court found a *Walker Process* counterclaim to be compulsory, but rather than dismissing with leave to plead the counterclaim in a prior-filed action, the court stayed its proceedings in view of the prior-filed proceedings. The resolution of an inventorship dispute in the prior-filed proceeding would necessarily decide facts affecting the *Walker Process* claim, so judicial economy would be served by a stay, the court reasoned.

379  Cf. Donahey, 39 IDEA J. L. & Tech., at 516 (asserting that in contrast to *Walker Process* and *Handgards* claims, "misuse and other more economically-oriented antitrust counterclaims would seem generally to be distinct in nature and substance from patent validity and infringement issues" and therefore should usually be deemed permissive).

380  See § 3.03[A][2]. Tying allegations form the basis for patent misuse theories in the majority of misuse cases. *Id.*

381  See § 3.03[C][2].

382  See, e.g., Charles A. Wright and Arthur R. Miller, 9 Fed. Prac. & Proc. Civ. 2d § 2389 (1990) ("the district judge may order a separate trial of independent issues raised by a compulsory or permissive counterclaim under Rule 13(a) or 13(b)…") [hereinafter Fed. Prac. & Proc. Civ. 2d]. The very existence of Rule 13(i) seems consistent with the proposition that a compulsory counterclaim analysis under Rule 13(a) is not necessarily determinative of an issue separation analysis under Rule 42(b), even if some of the underlying considerations are the same. See Wright, Miller & Kane, 6 Fed. Prac. & Proc. Civ.2d at § 1437 ("In many ways, Rule 13(i) is little more than a cross reference to Rules 42(b) and 54(b), thereby assuring the parties that those rules do apply in the counterclaim and cross-claim situations and informing the court of its extensive discretion to shape the action as it sees fit") (footnotes omitted).

383  See § 5.06 for relevant considerations in the application of Rule 42(b).

384  Cf. Donahey, 39 IDEA J. L. & Tech., at 516 (arguing that if judicial efficiency is promoted by trying patent and antitrust claims separately, it would be "inappropriate and illogical" to find antitrust claims compulsory to patent claims).

385  *Harley-Davidson Motor Co. v. Chrome Specialties, Inc.,* 173 F.R.D. 250 (E.D. Wis. 1997).

386  *Id.* at 252.

387  *Id.* at 253.

388  *Minnetonka, Inc. v. Sani-fresh Int'l, Inc.,* 103 F.R.D. 377 (D. Minn. 1984).

389  The court cited Lanham Act § 33(b)(7) [15 U.S.C. § 1115(b)(7)], which provides that antitrust allegations can be raised even as to trademark registrations that have become incontestable. See Chapter 2 for a general discussion of the concept of incontestability in trademarks.

390  *Grumman Systems Support Corp. v. Data General Corp.,* 125 F.R.D. 160 (N.D. Cal. 1988).

391  *Id.* at 162.

392  *Mead Data Central, Inc. v. West Pub. Co.,* 679 F. Supp. 1455 (S.D. Oh. 1987).

VitalLaw™  

# [IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law - Hovenkamp, Janis, Lemley, Leslie and Carrier, § 11.03, ANTICOMPETITIVE LITIGATION CLAIMS](#)

IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law - Hovenkamp, Janis, Lemley, Leslie and Carrier

Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, Christopher R. Leslie & Michael A. Carrier, IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law § 11.03 (3rd Edition, 2021 Supp. 2016) 3rd Edition, 2021 Supp.

[Click to open document in a browser](#)

**Last Updated: 11/2021**

p. 11-30

## [A] Introduction; Nature of the Claim

In the previous section, we considered the problem of enforcing patents improperly obtained through fraud. In this section we consider a somewhat different issue: the enforcement of an intellectual property right that, while not obtained by fraud, is known by its owner at the time of enforcement to be invalid, [114] unenforceable, or not to be infringed.

p. 11-30

p. 11-30.1

Because the intellectual property right in this set of cases was not itself obtained through fraud, the focus in this section will be on the nature of the enforcement action itself, not on an intellectual property owner's behavior before the Patent and Trademark Office (PTO).

The canonical case of anticompetitive litigation—and the one that gives the doctrine its name—is *Handgards, Inc. v. Ethicon, Inc*. [115] In *Handgards,* Ethicon owned two patents relating to the manufacture of surgical gloves with paper inserts. It asserted these patents against Handgards and others in the industry. Ethicon voluntarily dismissed one of its patents from suit before trial, and the other patent was held invalid. After the verdict in the patent case, Handgards filed suit alleging that Ethicon had violated the antitrust laws by engaging in its patent litigation in "bad faith."

The court noted that "patentees must be permitted to test the validity of their patents in court through actions against alleged infringers." [116] It identified as the critical problem for such anticompetitive litigation cases "to provide the means whereby the bad faith infringement action

p. 11-30.1

p. 11-30.2

can be identified *post hoc* with a sufficiently high degree of certainty to make it highly improbable that the action in fact was brought in good faith." [117] The court sought to supply such a means by establishing a strong presumption against a finding of bad faith litigation. [118]

Since *Handgards* was decided, the Supreme Court has set forth the standards for maintaining such a claim in more detail. [119] The Court's test is somewhat stricter than the Ninth Circuit's test in *Handgards.* It is presented in the context of *Noerr-Pennington* immunity, a subject to which we now turn.

## [B] *Noerr-Pennington* Immunity

## [1] Background and Basis


early in the litigation. Further, if the court agrees to bifurcate the case, it may make sense to defer all antitrust discovery until after the infringement dispute is resolved. [272] But it will not always be possible to

*p. 11-70.1*
*p. 11-70.2*

wait, and antitrust claimants should have a full opportunity to conduct discovery on the issue of intent—though they should not be permitted to introduce that evidence unless they can demonstrate objective baselessness as well.

*(D) Pleading requirements.* Although the normal rule for pleading is that a complaint need only give notice of the issues to be litigated, Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pled with particularity. This is a procedural requirement designed to deter plaintiffs from making such allegations lightly; it is distinct from the proof required on the merits. *Walker Process* claims must be pled with particularity because they involve allegations that the patentee knowingly defrauded the PTO. By contrast, sham litigation claims do not require proof of fraud in the same sense, though the requirement of improper motivation may suggest some minimum level of deceit. Nonetheless, one court has held that Rule 9(b) requires sham litigation claims to be pled with particularity as well. [273] In that case, the plaintiffs filed claims for trademark infringement as well as a UDRP proceeding in an effort to transfer the defendant's domain name. The defendant alleged that these claims were "meritless" and that the marks were "unenforceable" and "generic," but the district court dismissed the complaint for failure to plead with sufficient particularity. [274] The *Formula One* requirement does serve to weed out sham litigation claims at an early stage, but it sets pleading requirements that may be very difficult to meet, particularly at the outset of litigation. [275] Courts would be well advised not to require too high a standard. [276] As one court put it, "The requirement for particularity

*p. 11-70.2*
*p. 11-70.3*

in pleading fraud does not demand an exhaustive cataloging of facts, but only specificity sufficient to provide assurance that plaintiff has

*p. 11-70.3*
*p. 11-71*

investigated the alleged fraud and reasonably believes that a wrong has occurred." [277]

---

**Footnotes**

114   While there is substantial overlap between the category of patents obtained by fraud and that of rights known to be invalid when enforced, the overlap is far from complete. First, the latter category includes copyrights, trademarks and trade secrets, see *Professional Real Estate Investors v. Columbia Pictures*, 508 U.S. 49 (1993) (copyrights); *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842 (1st Cir. 1985) (trade secrets), *Clorox Co. v. Inland Empire Wholesale Grocers*, 874 F. Supp. 1065 (C.D. Cal. 1994) (trademarks); *The Scooter Store, Inc. v. SpinLife.com.LLC*, 777 F. Supp. 2d 1102 (S.D. Ohio 2011) ("[U]sing litigation unlawfully to extend trademarks or to destroy competition is anticompetitive conduct."), while the *Walker Process* category does not. But see *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 2013 WL 620266 (E.D. La. 2013) (allowing antitrust claim for attempted enforcement of allegedly fraudulently procured trademark). Second, a patentee may obtain a patent in good faith and only later learn that the patent was invalid (for example, because of a mistaken understanding of the law relating to on-sale bars, or because it later discovered anticipating prior art).

Courts tend to examine whether an infringement claim is objectively baseless at the time that the lawsuit was initiated. See *Handgards Inc. v. Ethicon Inc.*, 743 F.2d 1282, 1288-1289 (9th Cir. 1984); *GlobalTap LLC v. Smart Tap LLC*, No. 13 C 5322, 2015 WL 791256, at *6 (N.D. Ill. Feb. 24, 2015) (noting that the antitrust plaintiff "must allege that there was no basis, *at the time the complaint was filed*, for concluding that *any* theory in [the antitrust defendant's infringement] Complaint would survive") (emphasis added). However, even if the filing of the lawsuit was objectively reasonable, if the IP owner becomes aware during the course

<a>


of the infringement litigation that the lawsuit is objectively baseless and continues to pursue the lawsuit in order to harm its competitor through the litigation process, the litigation could be considered a sham for antitrust purposes. See Saami Zain, Antitrust Liability For Maintaining Baseless Litigation, 54 Santa Clara L. Rev. 729, 730 (2014) ("As modern litigation is often lengthy, complex, and resource intensive, it is not improbable that, regardless of the merits of the action when filed, at some point in the litigation process, it may become manifestly evident that no reasonable litigant could expect success on the merits. And at that point, maintaining the action is likely to be objectively baseless and unjustifiable.").

115  601 F.2d 986 (9th Cir. 1979).

116  *Id.* at 993.

117  *Id.*

118  *Id.* at 996 ("a patentee's infringement suit is presumptively in good faith and this presumption can be rebutted only by clear and convincing evidence.").

119  *Professional Real Estate Investors. v. Columbia Pictures*, 508 U.S. 49 (1993).

120  For a detailed treatment of the *Noerr-Pennington* or antitrust immunity doctrine, see 1 Antitrust Law ¶¶201 - 212 For a discussion of the doctrine in the context of intellectual property, see *id.* ¶709; James B. Kobak, Professional Real Estate Investors and the Future of Patent-Antitrust Litigation: Walker Process and Handgards Meet Noerr-Pennington, 63 Antitrust L.J. 185 (1994); Charles C. Hsieh, Professional Real Estate: The Line Between Patent and Antitrust, 7 Harv. J.L. & Tech. 173 (1993); Mark A. Lemley, Antitrust Counterclaims in Patent and Copyright Infringement Cases, 3 Tex. Intell. Prop. L.J. 1 (1994); Michael Chu, Note, An Antitrust Solution to the New Wave of Predatory Patent Infringement Litigation, 33 Wm. & Mary L. Rev. 1341 (1992).

121  See *Eastern R.Rs. President's Conf. v. Noerr Motor Freight*, 365 U.S. 127, 144 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

122  See, e.g., David McGowan & Mark A. Lemley, Antitrust Immunity: State Action and Federalism, Petitioning and the First Amendment, 17 Harv. J.L. & Pub. Pol'y 293 (1994). Other explanations for the doctrine have been offered, including the supposed "dissimilarity" between filing a lawsuit and anticompetitive conduct. It is the First Amendment's right to petition that seems the most plausible concern, however. The First Circuit's decision in *Darvic ME Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000) traces the conflict over the source of the doctrine.

123  See, e.g., *Professional Real Estate Investors v. Columbia Pictures*, 508 U.S. 49 (1993); *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508 (1972).

124  See *Pearson Educ. v. Allen Air Conditioning*, 2014 WL 2154099 (S.D.N.Y. May 22, 2014) (granting motion to dismiss because "[t]here is nothing unlawful regarding Publishers' coordinated commencement of litigation to protect their copyrights from a similar course of conduct—even if that litigation fails. Such activity is protected by the Noerr-Pennington doctrine …").

125  See *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988).

126  For more detail on this point, see § 11.04.

127  508 U.S. at 49.

128  *Id.* at 51-52.

129  *Id.* at 62 (affirming grant of summary judgment against PREI on its antitrust claim).

130  *Id.* at 60.

131  *Id.* at 60-61 (emphasis in original).

132  *Id.* at 61.

The Federal Circuit had previously held that the section of the patent statute providing for the award of attorneys' fees to the prevailing party in "exceptional cases," 35 U.S.C.A. § 285, required application of the *PREI* test, such that "[a]bsent misconduct in conduct of the litigation or in securing the patent, sanctions may