IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1286 (MSG) |
| | ) | C.A. No. 21-1455 (MSG) |
| BIONPHARMA INC., | ) | |
| | ) | REDACTED - PUBLIC VERSION |
| Defendant. | ) | |

**PLAINTIFF AZURITY PHARMACEUTICALS, INC.'S ANSWERING BRIEF
IN OPPOSITION TO BIONPHARMA'S MOTION TO STAY PROCEEDINGS**

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
Wendy L. Devine
Kristina M. Hanson
Jody Karol
One Market Plaza
Spear Tower Suite 3300
San Francisco, CA 94105
(415) 947-2000

Natalie J. Morgan
Evan Sumner
Granville C. Kaufman
12235 El Camino Real
San Diego, CA 92130
(858) 350-2300

Jeffrey C. Bank
Alexander Poonai
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800

Ty W. Callahan
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

Originally Filed:  November 23, 2022
Redacted Version Filed:  November 30, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity
Pharmaceuticals, Inc.*

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.   NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS ........... 3

    A.    Patent Discovery ........................................................................................... 3

        1.    The Parties Have Engaged in Extensive Patent Discovery ........................ 3

        2.    The Only Pending Patent Discovery Disputes Concern Discovery from Bionpharma ........................................................................................ 4

        3.    Bionpharma's Remaining Patent Discovery Complaints ......................... 5

    B.    Antitrust Discovery ....................................................................................... 6

        1.    Bionpharma Opposes a Stay of Antitrust Discovery ................................ 6

        2.    Bionpharma Agrees to Stay Antitrust Discovery Pending a Ruling on the Motion to Dismiss ........................................................................ 6

        3.    Bionpharma Changes Its Mind Again and Seeks to Re-Start Antitrust Discovery .................................................................................. 7

        4.    Bionpharma Changes Its Mind Again and Seeks to Stay All Discovery ................................................................................................ 8

III.  LEGAL STANDARDS ........................................................................................... 9

IV.   ARGUMENT ......................................................................................................... 9

    A.    Because Resolution of the Parties' Pending Motions Is Uncertain, the Simplification Factor Is Neutral ................................................................ 9

    B.    With the Close of Fact Discovery Approaching and a Trial Date Set, the Stage of the Litigation Disfavors a Stay ................................................ 12

    C.    Delaying Trial Will Unduly Prejudice Azurity and Allow Bionpharma to Gain a Clear Tactical Advantage, Which Strongly Weighs Against a Stay ......... 14

V.    CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR,
    2010 WL 3522327 (D. Del. Sept. 2, 2010) ....................................................................... 11, 17

*Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS,
    2010 WL 5149351 (D. Del. Dec. 13, 2010) ..................................................................... 15, 16

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985) .............................................................................................. 8

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR/SRF,
    2015 WL 5145526 (D. Del. Sept. 1, 2015) ..................................................................... 18

*Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS,
    2016 WL 1089752 (D. Del. Mar. 21, 2016) .................................................................... 10

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F. Supp. 656 (D. Del. 1990) ..................................................................................... 14

*Eagle Pharm., Inc. v. Eli Lilly & Co.*, No. 18-1121-MSG,
    2018 WL 6201704 (D. Del. Nov. 27, 2018) .................................................................... 13

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
    100 F. Supp. 3d 357 (D. Del. 2015) ............................................................................... 15, 17

*FMC Corp. v. Summit Agro USA, LLC*, No. 14-51-LPS,
    2014 WL 3703629 (D. Del. July 21, 2014) ............................................................... 15, 16, 17

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) .......................................................................................... 9, 19

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS,
    2012 WL 5599338 (D. Del. Nov. 15, 2012) .................................................................... 14

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT,
    2013 WL 663535 (D. Del. Feb. 25, 2013) ...................................................................... 14, 20

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT,
    2013 WL 1743854 (D. Del. Apr. 22, 2013) .................................................................... 14

*Intell. Ventures I LLC, v. AT & T Mobility LLC*, No. 13-1668-LPS,
    2016 WL 6542857 (D. Del. Oct. 24, 2016) .................................................................... 14

*Intell. Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR/SRF,
    2015 WL 3773779 (D. Del. May 15, 2015)...................................................................9

*IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB,
    2020 WL 6270776 (D. Del. Oct. 26, 2020) ........................................................14, 15

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. 14-1192-LPS-CJB,
    2015 WL 1737476 (D. Del. Apr. 9, 2015).........................................................9, 10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...................................................................................................9

*Life Techs. Corp. v. Illumina, Inc.*, No. 09-706-RK,
    2010 WL 2348737 (D. Del. June 7, 2010).................................................................13

*Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14-JFB-SRF,
    2018 WL 11189633 (D. Del. Dec. 12, 2018)...............................................................15

*Malon v. Franklin Fin. Corp.*, No. 3:14-cv-671 HEH-RCY,
    2014 WL 5795730 (E.D. Va. Nov. 6, 2014)...............................................................17

*Millennium Pharms., Inc. v. Teva Parenteral Meds., Inc.*, No. 09-CV-105,
    2010 WL 1507655 (D. Del. Apr. 14, 2010).................................................................19

*Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-217-JFB-SRF,
    2021 WL 1840645 (D. Del. May 7, 2021).................................................... *passim*

*Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-217-JFB-SRF,
    2021 WL 2856596 (D. Del. July 8, 2021) ...................................................................9

*Minerva Surgical, Inc. v. Hologic, Inc.*, No. 3:17-cv-02013-JD,
    2018 WL 306689 (N.D. Cal. Jan. 5, 2018)................................................................16

*Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS,
    2013 WL 3353984 (D. Del. July 2, 2013) ...............................................................16

*Orthophoenix, LLC v. Dfine, Inc.*, No. 13-1003-LPS,
    2015 WL 1938702 (D. Del. Apr. 28, 2015)..................................................................9

*Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS,
    2013 WL 2372206 (D. Del. May 30, 2013).........................................................11, 12, 13

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001)................................................................................16

*SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS,
    2013 WL 144255 (D. Del. Jan. 11, 2013)..............................................................15, 16, 17

*SoftView LLC v. Apple Inc.*, No. 10-389-LPS,
   2012 WL 3061027 (D. Del. July 26, 2012) ...........................................................................13

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   193 F. Supp. 3d 345 (D. Del. 2016)................................................................................17, 18

*Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*,
   376 F.2d 543 (3d Cir. 1967).................................................................................................16

## RULES

D. Del. Local Rule 7.1.1 .............................................................................................................2, 8

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT[1]

Plaintiff Azurity Pharmaceuticals, Inc. ("Azurity") filed this case in June 2021 to enforce its patent rights against Defendant Bionpharma Inc. ("Bionpharma").  Since then, Bionpharma has repeatedly sought to stave off trial for as long as possible, now asking this Court to stay these cases and push off the February 2024 trial date indefinitely.  For the reasons set forth herein, Azurity respectfully requests that Bionpharma's motion be denied.

Under the traditional stay factors, Bionpharma's motion should be denied.  The prejudice factor controls the outcome here, particularly insofar as the parties are direct competitors.  A delay of trial—the practical effect of granting Bionpharma's stay motion—would unduly prejudice Azurity by further prolonging resolution of this case, including Azurity's ability to attain injunctive relief, all while Bionpharma continues to market and sell its competing product in defiance of Azurity's patent rights.  This weighs strongly against a stay, especially because Bionpharma fails to identify any actual hardship it will face if its motion is denied.

The remaining stay factors support Azurity's position.  The stage of litigation—with a trial scheduled, discovery set to close in a few weeks, and the parties having already expended significant resources on the litigation—favors denying the request to stay.  And although the Court's resolution of pending motions may simplify the case, that outcome is speculative, at least because Bionpharma's 12(c) motion is a repeat of arguments the Court has already denied. Moreover, some issues will remain no matter the resolution of the pending motions, rendering the simplification factor neutral.  On balance, the factors disfavor a stay.

Although Azurity previously filed a motion to stay, Azurity's motion was materially different than Bionpharma's instant motion.  First, Azurity's motion was limited to seeking a stay

---

[1] All "D.I." references are to the docket in C.A. No. 21-1286, unless otherwise indicated.

on discovery and proceedings narrowly tailored to the antitrust issues raised in its motion to dismiss.  Bionpharma seeks a stay on the entire litigation, which is broader than the issues at stake in the pending motions it cites.  Second, the timing of the parties' stay motions distinguishes them.  Azurity moved for its partial stay soon after Bionpharma began pursuing its antitrust counterclaims and early in the fact discovery period.  On the other hand, Bionpharma waited until the very end of fact discovery.  In fact, contrary to the parties' previous agreement to hold antitrust discovery in abeyance, in October Bionpharma insisted that Azurity proceed with antitrust discovery. When Azurity agreed to proceed and served reciprocal antitrust discovery, Bionpharma changed course and sought a complete stay of proceedings.  Ultimately, Azurity withdrew its stay motion to allow the case to proceed expeditiously and to maintain its trial date; Bionpharma now seeks a late stay that would all but force a new trial date.

Bionpharma's motion to stay is really based on a series of unfounded discovery complaints that ignores key facts, including the omission of the fact that Bionpharma refused to even discuss a proposal from Azurity to extend the fact discovery deadline by two months, which would fully alleviate Bionpharma's professed concerns.  Instead, Bionpharma declared an impasse and rushed to file its motion (without the Local Rule 7.1.1 averment that it made "a reasonable effort" to reach agreement), but then acknowledges in its brief that an extension of the schedule may cure its complaints—a possible solution that Bionpharma refused to even discuss when Azurity proposed it the day before.  Azurity attaches here as Exhibit 1 its proposed amended schedule that would provide the parties with sufficient time to complete discovery, including any necessary antitrust discovery, and also maintain the current trial date.  For the reasons set forth herein, Bionpharma's motion should be denied in its entirety.  Alternatively, Azurity requests entry of the amended schedule set forth in Exhibit 1.

## II.     NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF FACTS

Bionpharma asserts that Azurity's "dilatory" discovery tactics have left the parties unable to close out discovery.  D.I. 214 at 7-8, 10-13.  The record shows otherwise, as described below. Regardless, none of Bionpharma's discovery accusations support a stay of the entire action.

### A.     Patent Discovery

#### 1.     The Parties Have Engaged in Extensive Patent Discovery

With respect to patent discovery, document discovery is largely complete.  Although Bionpharma claims that the parties have exchanged "only some" discovery (D.I. 214 at 10), the parties agreed that all documents, interrogatories, and fact depositions from Civil Action Nos. 18-1962-LPS and 19-1067-LPS have been deemed produced and/or operative in this case.  D.I. 126 at 3, 6-7.[2]

As the parties recognized early in the case (e.g., in submitting the proposed scheduling order), the patent discovery needed in this litigation would focus on issues that were not part of the prior litigation, such as damages.  *E.g.*, D.I. 116 at 3; D.I. 117 at 1.  Discovery has proceeded accordingly.[3]   For example, Bionpharma has served 99 requests for production and 9 interrogatories, mostly related to patent discovery.  D.I. 215-1 (Ex.[4] A); D.I. 215-2 (Ex. B); D.I. 215-8 (Ex. H); D.I. 215-12 (Ex. M); *see also* D.I. 215-14 (Ex. O) at 6-7, 8 (identifying Request Nos. 15, 20, 44-53, 59, and 63, and Interrogatory No. 4 as antitrust discovery).  In corresponding

---

[2] This includes the document productions from the prior litigation: Azurity produced over 104,000 pages of documents; Bionpharma produced over 38,000 pages of documents; and third-party CoreRx, Inc. ("CoreRx"), Bionpharma's former supplier, produced over 58,000 pages of documents.

[3] Again, using document production as a metric: Azurity has produced over 17,000 pages of documents since the first litigation; and Bionpharma has produced about 2,000 pages of documents since the first litigation.

[4] Lettered exhibits are attached to Bionpharma's motion.  Numbered exhibits are attached hereto.

fashion, Azurity has served 80 requests for production and 11 interrogatories related to patent discovery. D.I. 215-6 (Ex. F); D.I. 215-7 (Ex. G); D.I. 215-9 (Ex. I); D.I. 215-24 (Ex. Y); D.I. 215-26 (Ex. AA); Ex. 3 at Interrogatory No. 11. And contrary to Bionpharma's allegations of delay (D.I. 214 at 10-11), Azurity proceeded with discovery in a timely manner. Other than discovery concerning Bionpharma's new supplier, Novitium Pharma LLC ("Novitium")—the identity of which Azurity only learned in September—Azurity served the vast majority of its patent-related discovery on May 10, 2022, well before the substantial completion of document production and close of fact discovery deadlines. D.I. 215-6 (Ex. F); D.I. 215-7 (Ex. G).[5]

As the above summary indicates, the parties have engaged in significant discovery with respect to the patent claims and defenses. Indeed, other than depositions, which Bionpharma has not noticed, Azurity believes that it has satisfied or will shortly satisfy its patent discovery obligations.[6]

### 2. The Only Pending Patent Discovery Disputes Concern Discovery from Bionpharma

The only pending patent discovery disputes concern discovery from Bionpharma, which Azurity has properly raised with this Court. D.I. 217 at 2. These disputes should be addressed per the Scheduling Order dispute resolution process. D.I. 126 at 7(h)(iii).

---

[5] In addition to the discovery to Bionpharma concerning its new supplier (D.I. 215-24 (Ex. Y); D.I. 215-26 (Ex. AA); Ex. 3 at Interrogatory No. 11), Azurity also served third-party subpoenas on CoreRx and Novitium (D.I. 221; D.I. 230). Azurity also recently noticed Bionpharma's Rule 30(b)(6) deposition (D.I. 220) and depositions for five Bionpharma witnesses (D.I. 224; D.I. 225; D.I. 226; D.I. 227; D.I. 228), as is typically done towards the end of fact discovery.

[6] Bionpharma's assertion that it "has not yet had the opportunity to notice depositions in these cases" is wrong. D.I. 214 at 12. At the very least, Bionpharma could have identified topics for a Rule 30(b)(6) deposition. Azurity notes that it was able to notice Bionpharma's corporate deposition, in addition to depositions of Bionpharma witnesses, despite having live discovery disputes. *E.g.*, D.I. 217 at 2 (identifying four discovery disputes).

### 3.      Bionpharma's Remaining Patent Discovery Complaints

Bionpharma makes two unfounded accusations with respect to Azurity's discovery conduct when the only outstanding disputes arise from Bionpharma's conduct, as discussed above.

First, Bionpharma complains of Azurity's response to Interrogatory No. 1, which concerns Azurity's validity contentions.  D.I. 214 at 7-8, 11, 12.  As Bionpharma notes, Azurity agreed to supplement its response to this interrogatory on September 19.  *Id.* at 7.  Azurity did so on October 28, providing a 17-page response.  D.I. 215-24 (Ex. Z) at 3-19.  As part of Azurity's response (its first since receipt of Bionpharma's invalidity contentions), Azurity stated that it did not consider Bionpharma's invalidity defenses adequately disclosed because they incorporated by reference the entirety of two prior expert declarations from Dr. Moreton—including one that does not concern any patents currently in litigation.  *Id.* at 4.  Notably, the declarations are hundreds of pages long, and then attach or incorporate other declarations directed to additional patents, making Bionpharma's "incorporated" invalidity "contentions" thousands of pages in total.  *E.g.*, D.I. 42; D.I. 43.  Azurity nonetheless stated that it would supplement its response if Bionpharma provided more definite contentions or limited its incorporation by reference to whatever positions among the thousands of incorporated pages it actually believes apply to the two patents-in-suit.  Ex. 5 at 1.  Bionpharma has refused to do so.

Second, Bionpharma complains that Azurity improperly withheld documents from other litigations on third-party confidentiality grounds.  D.I. 214 at 11-12.  As Azurity repeatedly informed Bionpharma, however, it did not oppose the production of such information but, pursuant to the terms of the protective orders from those other cases, Azurity simply could not produce the confidential information of third parties without their consent or a court order.  *E.g.*, Ex. 4 at 10; Ex. 6 at 8-9.  Bionpharma knows that Azurity is bound by the terms of those protective orders and cannot produce these documents without consent of the other party or a court order: when a

defendant in another case requested similar documents that contained Bionpharma confidential information, Bionpharma initially moved to intervene and for a protective order to prevent disclosure of those documents. *See generally* Ex. 8; Ex. 9. Azurity worked diligently to secure such consent (at times with counsel for Bionpharma copied on the correspondence) and did so, although some parties did not consent until Bionpharma took its dispute to the Court. Ex. 4 at 7; Ex. 6 at 1; Ex. 7 at 1. Azurity promptly produced the requested documents following receipt of consent from the various third parties.

In sum, Bionpharma's patent discovery complaints are unfounded. But even if a modest extension to the fact discovery deadline is warranted, Azurity's proposed amended schedule (Exhibit 1) would accommodate that without staying the entire action.

### B.     Antitrust Discovery

#### 1.     Bionpharma Initially Opposes a Stay of Antitrust Discovery

Bionpharma served Azurity with antitrust-related discovery requests on March 21, 2022. D.I. 215-1 (Ex. A); D.I. 215-2 (Ex. B). Azurity filed its motion to dismiss and alternative motion to stay and bifurcate on March 24. D.I. 148; D.I. 149. On April 20, the parties discussed, but could not agree, on whether to stay the antitrust discovery served by Bionpharma until the Court decided Azurity's motion, and thus Azurity filed a motion to stay such discovery the following day. D.I. 156; D.I. 157.

#### 2.     Bionpharma Subsequently Agrees to Stay Antitrust Discovery Pending a Ruling on the Motion to Dismiss

On May 2, counsel for Bionpharma sent a letter to Azurity stating that "Bionpharma is aware that Azurity has filed a motion to stay antitrust discovery . . . . Bionpharma will respond to Azurity's motion in due course. Without waiving Bionpharma's immediate entitlement to discovery related to Bionpharma's antitrust counterclaims, ***Bionpharma will defer addressing***

***Azurity's antitrust objections until the Court resolves the motion***."  Ex. 2 (the "Johnson Letter")
at 1 (emphasis added).  Bionpharma confirmed its position in the August 8 Interim Joint Status
Report, when the parties jointly wrote: "Because of Azurity's pending motion to stay antitrust
discovery (D.I. 157), no antitrust discovery has been exchanged to date."  D.I. 186 at 3.  From May
until October, Bionpharma sought no antitrust discovery and did not respond to the responses and
objections that Azurity had served.

### 3. Bionpharma Changes Its Mind Again and Seeks to Re-Start Antitrust Discovery

Bionpharma only re-raised the issue of antitrust discovery last month, on October 3,
demanding that Azurity "immediately produce the antitrust discovery sought in connection with
Bionpharma's first sets of Rule 34 requests for production and Rule 33 interrogatories."  D.I. 215-
35 (Ex. JJ) at 2-3.  On October 6, Azurity asked Bionpharma if it was reversing the position set
forth in the Johnson Letter, stating it was "not aware of a live dispute regarding antitrust discovery
other than that which the Parties have already fully briefed, and which is presently sub judice."  *Id.*
at 2.  Bionpharma replied:

> [The Johnson Letter] was predicated on the belief that the parties would
> receive an order on Azurity's motion to stay antitrust discovery well before
> the close of fact discovery in these cases . . . . At the risk of stating the
> obvious, the parties have not yet received an order from the Court on
> Azurity's motion to stay antitrust discovery, and the fact discovery cutoff is
> in approximately two months . . . .

*Id.* at 1.

Prompted by Bionpharma's change of course, Azurity diligently began to proceed with
antitrust discovery, particularly given the approaching close of discovery on December 12.
Specifically, on November 1 and 2, Azurity served Bionpharma with document requests and a
deposition notice and provided Bionpharma with copies of Rule 45 subpoenas Azurity intended to
serve on various third parties.  D.I. 215-27 (Ex. BB); D.I. 215-28 (Ex. CC); D.I. 215-29 (Ex. DD).

Bionpharma then demanded that Azurity withdraw not only its stay motion, but also its motion to dismiss, as well as "its objection to producing antitrust discovery." D.I. 223-1, Ex. E at 1. There was no basis for Bionpharma to request that Azurity withdraw the motion to dismiss, and Azurity maintains its positions described in that motion. However, although Azurity's earlier motion to stay antitrust discovery pending resolution of the motion to dismiss was appropriate, Azurity's foremost priority is to proceed expeditiously with the litigation and keep its trial date so that it can prove its patent infringement claims. Accordingly, Azurity agreed to proceed with antitrust discovery (pending resolution of the motion to dismiss) and withdrew its earlier motion to stay. D.I. 211.

### 4. Bionpharma Changes Its Mind Again and Seeks to Stay All Discovery

Five days later, and after Azurity also pressed Bionpharma for agreed-upon *damages* discovery, Bionpharma changed course yet again. On November 7, Bionpharma informed Azurity that it "intend[ed] to seek a stay of proceedings pending resolution of the parties' motions to dismiss." D.I. 223-1, Ex. B at 1. When the parties met and conferred the next day, Azurity proposed a two-month extension of the fact discovery deadline (attached as Exhibit 1) that would accommodate Bionpharma's concerns regarding the time left in discovery, but Bionpharma's lead counsel refused to discuss the proposal and hung up. *See, e.g.*, D.I. 217 at 2; D.I. 223 at 2-3.

Bionpharma filed its stay motion the next day, seeking an indefinite extension of the schedule. D.I. 214. Notably, Bionpharma did not mention Azurity's proposed schedule extension in its opening papers. Bionpharma also failed to include the required statement averring that it made "a reasonable effort" to reach agreement with Azurity on these issues, and its motion can be denied on that basis alone. D. Del. L.R. 7.1.1; *see generally* D.I. 213.

## III.    LEGAL STANDARDS

Courts have discretionary authority to grant a motion to stay.  *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60-61 (3d Cir.1985).  "Courts consider three factors in deciding how to exercise this discretion: (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage."  *Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-217-JFB-SRF, 2021 WL 1840645, at *2 (D. Del. May 7, 2021) (citations omitted), *report and recommendation adopted*, 2021 WL 2856596 (D. Del. July 8, 2021).  "It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party."  *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *Intell. Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) (same).

## IV.    ARGUMENT

### A.    Because Resolution of the Parties' Pending Motions Is Uncertain, the Simplification Factor Is Neutral

Azurity does not dispute that the Court's resolution of the parties' pending motions—i.e., Azurity's motion to dismiss (D.I. 148; D.I. 149); and Bionpharma's Rule 12(c) motion (D.I. 172; D.I. 173)—may simplify issues for trial, and indeed, Azurity took this position in its original Motion to Stay (D.I. 157 at 5-8).  But Azurity's stay motion was very different than Bionpharma's motion.  Azurity's motion was limited to staying only antitrust discovery, and, if granted, would have allowed the parties to focus on and resolve the patent issues in a timely fashion, whereas Bionpharma's present motion will delay the entire proceedings.  *See Orthophoenix, LLC v. Dfine,*

*Inc.*, No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) (Stark, J.) (reasoning that antitrust counterclaims raise "complex issues potentially requiring discovery well beyond what is relevant to patent infringement and invalidity").  Moreover, whether resolution of pending motions could simplify issues for trial does not end the inquiry under this factor.  "[T]he Court cannot solely focus on the potential outcome most favorable to the party seeking the stay; instead, it must assess '*all* of the possible outcomes of the proceeding or inquiry that the case would be stayed in favor of.'"  *Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445-LPS-CJB, slip op. at 4 (D. Del. July 20, 2015) (Ex. 10) (quoting *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. 14-1192-LPS-CJB, 2015 WL 1737476, at *2 (D. Del. Apr. 9, 2015)).  Where "[t]he chance that a stay might lead to the total dismissal of the case, or to a very significantly narrowed set of claims or legal issues, seems roughly similar to the chance that it would not . . . this factor [is] neutral."  *Id.* at 6; *see also Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2016 WL 1089752, at *1 (D. Del. Mar. 21, 2016) (finding "the simplification of issues factor neither favors nor disfavors a stay" where "there is at least a potential for significant simplification of issues in this case . . . [but] if the PTO does not invalidate all of the asserted claims, significant issues will remain to be resolved"); *Shure Inc. v. ClearOne, Inc.*, C.A. No. 19-1343-RGA, slip op. at 1 (D. Del. Nov. 1, 2019) (Ex. 11) ("[T]he simplification factor is neutral at best.  While it is true that if the Court were to grant Defendant's Motion in its entirety, the case would be over, (D.I. 44 at 1), that Motion involves many different arguments about many different types of claims.  Even if some arguments made via the Motion are successful, some may not be, and it is thus reasonable to infer that (purely as a statistical matter) there is a decent likelihood that at least a portion of the non-patent case will survive the Motion.").

These cases are apt here.  In particular, unless both parties' motions to dismiss are granted outright, a significant portion, if not all, of this case will move forward.  Moreover—in addition to

simply the number and type of claims currently pending between the parties—there is good reason to believe that this case will move forward.  To wit, Bionpharma's Rule 12(c) motion is based on the same claim preclusion argument that the Court already rejected in denying Bionpharma's initial motion to dismiss.  *Compare* D.I. 8-1 (Bionpharma's Motion to Dismiss) at 2 ("[U]nder Federal Circuit law, including *SimpleAir* . . . , Azurity's claims in the instant Third Wave Suit are precluded and the Complaint should be dismissed."), *with* D.I. 173 (Bionpharma's 12(c) Motion) at 1 ("[T]he '023 patent's claims . . . are essentially the same as the claims that failed in the prior suits, per the Federal Circuit's decision in *SimpleAir* . . . ."); *see also* D.I. 87 (denying Bionpharma's motion to dismiss); D.I. 96 at 114:6-22 ("I'm not sure today that the defendants are correct in their interpretation of *SimpleAir*. . . . [I]t's undisputed that the '023 patent, that is the patent-in-suit, contains broader claims than the claims that were asserted in the first wave or second wave cases before me. . . . From that it follows, I think, that the noninfringement arguments credited in my post-trial opinion in the first wave case are probably irrelevant here.").  Thus, Bionpharma's claim that a stay may result in simplification with respect to the patent issues appears speculative, which counterbalances any potential simplification, thereby rendering this factor at least neutral with respect to the patent claims.[7]  *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS, 2013 WL 2372206, at *3 (D. Del. May 30, 2013) (finding the simplification factor "weighs against a stay," in part due to "the speculative nature of the prospect for simplification of the issues were a stay granted"); *The Gillette Co. v. Dollar Shave Club, Inc.*, No. 15-1158-LPS-CJB, slip op. at 7-8 (D. Del. Sept. 19, 2016) (Ex. 12) (finding the simplification factor "neutral" where "there are a

---

[7] This is a factually different situation than with respect to Azurity's motion to dismiss the antitrust counterclaims (and stay antitrust discovery), where the Court has not previously considered those arguments.

number of non-frivolous legal arguments standing in the way of a successful outcome for [defendant]") (citing *Yodlee*, slip op. at 6).

Bionpharma even admits that its 12(c) motion is not dispositive of all patent issues, which further weighs against a stay.  D.I. 214 at 9 n.4; *e.g.*, *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) ("[A] stay is not favored when . . . other issues outside the purview of [the separate proceedings] remain to be tried.").  A motion to dismiss the '405 Patent would not be *pro forma*, as Bionpharma suggests, but would require an independent determination of whether its claims are patentably indistinct.  Notably, the claims of the '405 Patent are broader than those of '023 Patent, which was the very reason that Judge Stark determined "the noninfringement arguments credited in my post-trial opinion in the first wave case are probably irrelevant here."  D.I. 96 at 114:11-22.

**B.    With the Close of Fact Discovery Approaching and a Trial Date Set, the Stage of the Litigation Disfavors a Stay**

Under the second stay factor, courts focus on "whether discovery is complete and a trial date has been set."  *Minerva*, 2021 WL 1840645 at *2.  With fact discovery closing in less than a month (December 12, 2022) and trial set to begin on February 1, 2024 (D.I. 126 at 3, 18), this factor weighs against a stay.

Azurity filed this case on June 22, 2021—over 16 months ago.  D.I. 1.  Since then, the parties have engaged in preliminary injunction proceedings (D.I. 24), a motion to transfer (D.I. 7), four separate dispositive motions (D.I. 8; D.I. 97; D.I. 148; D.I. 172), and multiple discovery disputes (D.I. 189; D.I. 199; D.I. 217), among other proceedings.  The parties have also engaged in extensive discovery, as discussed above.  *Supra* § II.A.1.  Furthermore, the parties are poised to conduct depositions, as is typical at the end of fact discovery.  In short, this case is not in "early stages of litigation" when "motions to stay are most often granted."  *Pragmatus*, 2013 WL 2372206

at *2 (citations omitted).  Rather, "the Court and the parties have already expended significant resources on the litigation, [such that] the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion."  *Id.*

Indeed, courts have routinely found this factor to weigh against a stay when presented with similar circumstances.  *E.g.*, *id.* at *2-3 (finding the stage of litigation factor to weigh "slightly against a stay" where no trial was scheduled, but the complaint was filed 19 months earlier, the fact discovery deadline was less than a month away, the parties had engaged in extensive discovery, and where the court had resolved a motion to transfer, a motion to dismiss, objections to both, and numerous discovery disputes); *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (finding the stage of litigation factor to "not favor a stay" where, despite no trial date and limited discovery, "[s]ubstantial time and resources have been devoted in this case to scheduling and the resolution of discovery disputes, as well as . . . motions to sever, stay, and dismiss"); *Life Techs. Corp. v. Illumina, Inc.*, No. 09-706-RK, 2010 WL 2348737, at *3-4 (D. Del. June 7, 2010) (finding the stage of litigation factor to "not favor a stay" where trial was scheduled, the fact discovery deadline was less than six months away, and more than a million pages of documents had been produced).  So too here.

Because Bionpharma cannot dispute that the case is at a stage in which this factor traditionally weighs against a stay, it instead argues that discovery is "far from complete" and Azurity is to blame.  D.I. 214 at 10-13.  Even if relevant to this factor, as explained in greater detail above (*supra* §§ II.A-B), Bionpharma's allegations concerning the status of discovery and Azurity's discovery conduct are simply wrong.  Specifically, discovery on the patent claims is largely complete (but for resolution of Bionpharma's refusals to provide certain discovery to Azurity).  Moreover, Bionpharma agreed to defer antitrust discovery for five months.  And

although Bionpharma sought to resume antitrust discovery last month, it quickly changed its mind

again after seeing the reciprocal discovery served by Azurity.[8]

### C.   Delaying Trial Will Unduly Prejudice Azurity and Allow Bionpharma to Gain a Clear Tactical Advantage, Which Strongly Weighs Against a Stay

By its motion, Bionpharma seeks "a significant extension of the schedule, including a new

trial date."  D.I. 214 at 14.  But delaying trial will cause undue prejudice to Azurity in further

prolonging the resolution of this case,[9] thereby allowing Bionpharma to gain a clear tactical

advantage in continuing to market and sell its competing, infringing product.  As prejudice is the

"most substantial and important issue" to consider in evaluating a request for a stay, this alone

warrants denial of Bionpharma's motion.  *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,

No. 12-054-GMS-MPT, 2013 WL 663535, at *5 (D. Del. Feb. 25, 2013), *report and*

*recommendation adopted*, 2013 WL 1743854 (D. Del. Apr. 22, 2013); *see also ImageVision.Net,*

*Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS, 2012 WL 5599338, at *5 (D. Del. Nov. 15,

2012) ("[T]he potential for a stay to simplify the issues before the court does pull gently in

[defendant's] favor. This factor, however, weighs lightly in this case and is insufficient to

overcome the prejudice consideration.").

---

[8] Notably, Bionpharma does not seek to stay antitrust discovery only.  Nor does Bionpharma join Azurity in its motion asking the Court to stay and bifurcate the antitrust counterclaims pending resolution of the patent claims, as is "common practice" in these cases.  *See* D.I. 149 at 19 (citing *Eagle Pharm., Inc. v. Eli Lilly & Co.*, No. 18-1121-MSG, 2018 WL 6201704, at *2 n.3 (D. Del. Nov. 27, 2018) (Goldberg, J.)).  Instead, Bionpharma seeks to stay *all* proceedings pending resolution of both its 12(c) motion and Azurity's motion to dismiss, but fails to explain why such an extraordinary remedy is justified.

[9] There should be no dispute that it is prejudicial for a plaintiff to lose its trial date.  *E.g.*, *Intell. Ventures I LLC, v. AT & T Mobility LLC*, No. 13-1668-LPS, 2016 WL 6542857, at *2 (D. Del. Oct. 24, 2016) (Stark, J.) (recognizing that "a stay would prejudice [p]laintiff" were it to "lose its trial date"); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) ("Any delay in the litigation of 89-167 will forestall the trial date agreed upon by [the parties] and result in prejudice to [plaintiff].").

*First*, Azurity and Bionpharma are undisputedly direct competitors. *E.g.*, D.I. 214 at 14 (referring to "Bionpharma's competing generic product"). "It is well established that [c]ourts are generally reluctant to stay proceedings where the parties are direct competitors." *ImageVision.Net*, 2013 WL 663535 at *6 (internal quotation omitted) (compiling cases); *see also Minerva*, 2021 WL 1840645 at *3 ("'[A] patentee has an interest in prompt enforcement of its patent rights,' particularly where, as here, the parties are direct competitors.") (quoting *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2020 WL 6270776, at *3 (D. Del. Oct. 26, 2020) (Bryson, J.)); *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14-JFB-SRF, 2018 WL 11189633, at *4 (D. Del. Dec. 12, 2018) ("The court concludes that [plaintiff] would suffer substantial prejudice from a stay because [the parties] are direct competitors in a two-player market . . . ."); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 363 (D. Del. 2015) (Stark, J.) ("[T]hese parties are fierce competitors who have been litigating against one another in multiple fora for over a decade, which disfavors a stay."); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) (Stark, J.) ("Courts are reluctant to stay proceedings where parties are direct competitors.") (citations omitted). This is because "delaying adjudication of a dispute between the competing parties . . . can 'have outsized consequences to the party asserting [claims for relief,] including the potential for loss of market share and an erosion of goodwill.'" *FMC Corp. v. Summit Agro USA, LLC*, No. 14-51-LPS, 2014 WL 3703629, at *5 (D. Del. July 21, 2014) (quoting *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013)); *see also Shure*, slip op. at 1 (Ex. 11) ("These parties are real, direct competitors in what appears to be a fairly narrow market, and so there is the worrisome prospect of continuing harm . . . that may be difficult to later fully address via monetary

damages.").  For the same reasons, the fact that Azurity and Bionpharma are direct competitors weighs strongly against a stay.[10]

*Second*, despite the parties' status as competitors being an integral component of the stay calculus, Bionpharma addresses this relationship obliquely at best, arguing that moving trial would not prejudice Azurity because (1) Azurity lost its preliminary injunction motion; and (2) Bionpharma's presence on the market has not irreparably harmed Azurity.  D.I. 214 at 13-16. Like with its analysis of the preceding factor, however, Bionpharma again fails to cite a single case in support of its positions.  Both of these arguments are legally unsound.

As to Bionpharma's first argument, the preliminary injunction proceedings do not support Bionpharma's argument—they undermine it.  Seeking a preliminary injunction is a "signal" that the parties compete and that "'real prejudice will flow from the imposition of a stay.'"  *FMC*, 2014 WL 3703629 at *6 (quoting *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013)); *see also Minerva*, 2021 WL 1840645 at *3 ("[Plaintiff] sought a preliminary injunction at the outset of the case . . . [which] further supports [its] contention that real prejudice could result from the imposition of a stay.") (citing *SenoRx*, 2013 WL 144255 at *8).  This is so even where the plaintiff was unsuccessful in the effort to obtain a preliminary

---

[10] Notably, the Asserted Patents do not expire for more than 13 years (March 25, 2036) and Azurity intends to seek injunctive relief if it prevails at trial.  A delay of trial would cause Azurity undue prejudice insofar as it would delay Azurity's opportunity to seek injunctive relief.  *E.g.*, *Minerva*, 2021 WL 1840645 at *3 ("[Plaintiff's] patent will not expire for another eight years, and the harms resulting from the alleged infringement continue to accrue."); *SenoRx*, 2013 WL 144255 at *9 ("The Court, of course, takes no position on whether [plaintiff] will be able to ultimately show in the latter stage of this case that infringement has occurred and, if it has, whether it cannot be sufficiently compensated by money damages.  But it need not draw such absolute conclusions to acknowledge the real prejudice [plaintiff] could face from a very lengthy delay before it can even reach that stage and have those issues resolved."); *Cooper*, 2010 WL 5149351 at *4 (noting that the patentee's "right to enforce the patent in the interim would be severely hindered").

injunction.[11]  *E.g.*, *Minerva*, 2021 WL 1840645 at *3 (prejudice factor weighs against stay);

*Minerva Surgical, Inc. v. Hologic, Inc.*, No. 3:17-cv-02013-JD, 2018 WL 306689, at *7 (N.D. Cal.

Jan. 5, 2018) (denying motion for preliminary injunction).

Bionpharma's second argument is likewise wrong, as it conflates undue prejudice with

irreparable harm.  Contrary to Bionpharma's argument, courts have repeatedly "cautioned not to

equate the calculus utilized with respect to this factor of the three-factor test (which examines

whether [plaintiff] will likely suffer 'undue prejudice' from a stay) with that of the test used to

examine a request for a preliminary injunction (which asks, *inter alia*, whether any harm suffered

is irreparable)."  *SenoRx*, 2013 WL 144255 at *8 (citations omitted); *see also Fairchild*, 100 F.

Supp. 3d at 362-63 ("The Court is not persuaded by [defendant's] contention that because the

Court already found that [plaintiff] could not meet its burden of showing irreparable harm to

support a permanent injunction in *Fairchild II* . . . , Fairchild cannot possibly be unduly prejudiced

by a delay."); *FMC*, 2014 WL 3703629 at *6 ("[I]t is important to note that the test for obtaining

injunctive relief is different from the calculus at play in considering this [prejudice] stay-related

factor . . . ."); *Malon v. Franklin Fin. Corp.*, No. 3:14-cv-671 HEH-RCY, 2014 WL 5795730, at

*2 (E.D. Va. Nov. 6, 2014) ("Courts generally consider undue prejudice to be something less than

irreparable harm.") (quotations and citations omitted).  Accordingly, Bionpharma's reliance on

---

[11] Moreover, "all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits."  *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001); *see also Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 548 (3d Cir. 1967) ("[T]he district court's findings in preliminary injunction cases are tentative and inconclusive . . . .") (citations omitted); D.I. 96 at 106:3-5 ("I am making the statements in the context of a preliminary injunction.  It's not a final decision.").

whether or not Bionpharma's presence on the market is causing Azurity irreparable harm does not answer the question of whether or not Azurity would suffer undue prejudice from a stay.[12]

  ***Third***, the timing of Bionpharma's request to stay, as well as its changes in positions, supports an inference that it "is seeking an inappropriate tactical advantage." *Belden*, 2010 WL 3522327 at *2; *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 350 (D. Del. 2016) ("[I]f the timing of the[] filings [relevant to defendant's stay request] appears less focused on facilitating an orderly review of patent claim validity, and more focused on simply disrupting the progression of the non-movant's district court case for disruption's sake, that can weigh against a stay."). In stark contrast to Azurity's early request for a stay of antitrust discovery, Bionpharma lay silent for months before requesting that the Court stay the case pending resolution of Azurity's motion to dismiss the antitrust counterclaims (filed March 24, 2022 (D.I. 148)) and Bionpharma's 12(c) motion (filed June 29, 2022 (D.I. 172)). Bionpharma did not seek a stay of proceedings until after it withdrew from the parties' agreement to hold antitrust discovery in abeyance, and after Azurity diligently served its antitrust discovery in response. *Supra* § II.B.4. Bionpharma's subsequent refusal to even consider a proposal to extend the fact discovery deadline (*id.*) suggests that it is not interested in the orderly completion of discovery but in delaying trial. This is improper and supports Azurity's prejudice argument. *E.g.*, *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR/SRF, 2015 WL 5145526, at *2 (D. Del. Sept. 1, 2015) (denying stay motion when used as "procedural tool").

---

[12] In addition, the longer that trial is delayed, the greater the risk that Bionpharma will be unable to satisfy a damages judgment (as damages will continue to accrue), which weighs against a stay. *E.g.*, *Hologic, Inc. v. Minerva Surgical, Inc.*, No. 20-925-JFB-SRF, slip op. at 5 (D. Del. Sept. 15, 2022) (Ex. 13) (finding that the defendant's potential inability to satisfy a damages judgment if the case is delayed weighs against a stay).

Additionally, Bionpharma's shifting position on whether or not this case should move forward further supports Azurity's prejudice argument. *E.g.*, *Alstom Grid LLC v. Certified Measurement, LLC*, No. 15-72-LPS-CJB, slip op. at 3-4 (D. Del. May 16, 2016) (Ex. 14) ("It is notable that when [declaratory-judgment plaintiff] filed its Section 101 Motion [eight months ago], it did ***not*** seek a stay of the proceedings pending resolution of that motion. Indeed, a mere ten days [later], [it] filed a brief ***in opposition*** to the stay being sought at that time by [patentee] pending resolution of an *inter partes* review proceeding regarding the asserted patents (a proceeding that had been instituted by non-parties). . . . Now, however, at this later stage of the case and in the middle of claim construction, [plaintiff] seeks a stay pending resolution of its Section 101 Motion, and in support, has made some statements that are clearly inconsistent with its prior arguments to the Court. . . . [T]his alone warrants considering the undue prejudice factor to militate against a stay.").

***Fourth***, Bionpharma has failed to demonstrate that the denial of a stay would result in a "clear case of hardship or inequity," as required when the stay would prejudice another party (here, Azurity). *Gold*, 723 F.2d at 1075-76. The only purported hardship identified by Bionpharma—an alleged inability to fairly complete discovery—is wrong, or at the very least mooted by Azurity's proposal to extend the fact discovery by a reasonable period.

As an initial matter, it is simply not the case that Azurity unilaterally "refused" to produce antitrust discovery.[13] Per the Johnson Letter, the parties ***mutually agreed*** to "defer addressing Azurity's antitrust objections until the Court resolves the motion." Ex. 2 at 1; *supra* § II.B.2.

---

[13] Bionpharma's claim that Azurity served 70 percent of its requests for production concerning patent issues within the last two months (D.I. 214 at 16) is equally incorrect. *Supra* § II.A.1.

Bionpharma only withdrew this position in October (D.I. 215-35 (Ex. JJ) at 1), and thereafter Azurity diligently began serving antitrust discovery. *Supra* § II.B.3.

Nevertheless, Bionpharma now argues that Azurity is supposedly "depriving it of the sufficient time it needs to secure, and to produce its own, antitrust discovery." D.I. 214 at 17. This is also wrong, as demonstrated by Bionpharma's refusal to even discuss the schedule with Azurity. *Supra* § II.B.4. In other words, Bionpharma's alleged hardship is entirely of its own making, which does not qualify as the "clear case of hardship or inequity" required to secure a stay. *E.g.*, *Millennium Pharms., Inc. v. Teva Parenteral Meds., Inc.*, No. 09-CV-105, 2010 WL 1507655, at *3 (D. Del. Apr. 14, 2010) (finding that defendants' alleged hardship "is one of their own creation," which "is not the type of hardship or balance of inequities that can appropriately convince this Court to issue a stay").

## V.    CONCLUSION

In sum, although the first factor (simplification of the issues) is neutral under the circumstances here, the second factor (stage of litigation) weighs against a stay, and the third factor (prejudice)—the "most substantial and important issue" (*ImageVision.Net*, 2013 WL 663535 at *5)—weighs strongly against a stay. Accordingly, for the foregoing reasons, Azurity respectfully requests that the Court deny Bionpharma's motion to stay proceedings or, in the alternative, enter the amended schedule proposed by Azurity which is attached hereto as Exhibit 1.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

_____

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity
Pharmaceuticals, Inc.*

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI PC
Wendy L. Devine
Kristina M. Hanson
Jody Karol
One Market Plaza
Spear Tower Suite 3300
San Francisco, CA 94105
(415) 947-2000

Natalie J. Morgan
Evan Sumner
Granville C. Kaufman
12235 El Camino Real
San Diego, CA 92130
(858) 350-2300

Jeffrey C. Bank
Alexander Poonai
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800

Ty W. Callahan
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

November 23, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 30, 2022, upon the following in the manner indicated:

John C. Phillips, Jr., Esquire                                        *VIA ELECTRONIC MAIL*
Megan C. Haney, Esquire
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806-4204
*Attorneys for Defendant Bionpharma Inc.*

Andrew M. Alul, Esquire                                               *VIA ELECTRONIC MAIL*
Roshan P. Shrestha, Esquire
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL  60601
*Attorneys for Defendant Bionpharma Inc.*

Aaron M. Johnson, Esquire                                             *VIA ELECTRONIC MAIL*
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
*Attorneys for Defendant Bionpharma Inc.*

Christopher J. Kelly, Esquire                                         *VIA ELECTRONIC MAIL*
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306
*Attorneys for Defendant Bionpharma Inc.*

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)