UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC.,<br><br>        *Plaintiff*,<br><br>  v.<br><br>BIONPHARMA INC., *et al.*,<br><br>        *Defendants*. | C.A. No. 21-1286-MSG<br>(consolidated) |

**DEFENDANT BIONPHARMA'S OPPOSITION TO PLAINTIFF AZURITY'S
REQUESTS FOR A PROTECTIVE ORDER AND
<u>AN ORDER COMPELLING PRODUCTION</u>**

*Of Counsel*:

Andrew M. Alul
Luke T. Shannon
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000

Aaron M. Johnson
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
612-977-8400

Christopher J. Kelly
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000

Dated:  June 2, 2023

John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Defendant
Bionpharma Inc.*

Defendant Bionpharma respectfully submits the instant Opposition to Plaintiff Azurity's requests for (1) a protective order ("PO") precluding the depositions of its board members; and (2) an order compelling Bionpharma to produce every document from its breach-of-contract action against its erstwhile contract manufacturer, Azurity's sister corporation CoreRx, in the Southern District of New York.[1]

## INTRODUCTION

As explained in Bionpharma's letter from yesterday, Azurity seeks a PO precluding the deposition of its board members (aside from its Executive Chairman, Amit Patel) under the so-called "apex doctrine," without ever searching its board members' custodial files for documents that may show their unique knowledge (including as to antitrust-specific discovery it promised to produce on March 28). *See generally* D.I.[2] 321. But even if Azurity's PO request was ripe for review, it should be denied, because the apex doctrine—which has "not yet [been] addressed at the appellate level," *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, C.A. No. 3:15-cv-07658, 2021 WL 3140030, at *8 (D.N.J. July 7, 2021), and thus is not necessarily binding on this Court—does not apply to shield high-ranking executives from depositions in cases where, as here, what is alleged is a sprawling course of anticompetitive conduct over 5 years, including at least seven lawsuits that were filed not to protect legitimate intellectual property rights, but to thwart competition. *See generally* D.I. 135, Bionpharma's CCLS. Bionpharma's antitrust claims **are not** focused on a discrete set of disputed historical facts, where the apex doctrine has traditionally shielded high-ranking executives who lack direct, non-redundant knowledge from depositions. Instead, Bionpharma's antitrust claims implicate the highest level of corporate decision-making; Bionpharma thus must be able to probe the knowledge, beliefs, and decisions of Azurity's management beyond its hand-picked, preferred witness (Amit Patel). *See In re Apple iPhone Antitrust Litig.*, C.A. No. 11-cv-6714-YGR (TSH), 2021 WL 485709, at *4 (N.D. Cal. Jan. 26, 2021) ("*iPhone*"). Moreover, as explained below, Bionpharma has produced documents showing that Azurity's board members have taken a hands-on role in management of both Azurity and CoreRx, and would likely have first-hand personal knowledge of the disputed issues in this case.

Finally, as Azurity has admitted, its RFP Nos. 121-123 and 129 seek **every document** that has been filed or exchanged in the SDNY action; they are entirely too broad and disproportional to the needs of these cases, and they implicate confidential third party information subject to the PO in that suit. Azurity's request for a PO and an order to compel should be denied.

## ARGUMENT

**I. AZURITY'S PO REQUEST SHOULD BE DENIED**

Because the apex doctrine "exists in tension with the otherwise broad allowance for discovery of party witnesses under the federal rules," *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012), "a party seeking to prevent a deposition carries a heavy burden to show

---

[1] *Bionpharma Inc. v. CoreRx, Inc.*, No. 1:21-cv-10656-JGK-VF (S.D.N.Y.) ("the SDNY action").
[2] All "D.I." citations are to the 21-1286 docket unless otherwise specified, and all abbreviations not defined herein have the meaning ascribed in the Table of Abbreviations set forth in Bionpharma's Opposition to Azurity's Motion to Dismiss (D.I. 155).

1

why it should be denied," making it "'very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent extraordinary circumstances,'" *McCoy v. SC Tiger Manor, LLC*, Civ. Action No. 19-723-JWD-SDJ, 2021 WL 1326302, at *7 (M.D. La. April 8, 2021) (quoting *Apple*, 282 F.R.D. at 263); *see also iPhone*, 2021 WL 485709, at *5; *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875(RBK/KW), 2021 WL 6111769, at *3 (D.N.J. Jun. 22, 2021). Like Apple's "attempt to block [its board members'] depositions," Azurity's too "entirely thus swims against precedent." *iPhone*, 2021 WL 485709 at *5.

"Courts in this circuit consider two factors . . . : 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way." *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, C.A. No. 14-mc-00072, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014). Azurity has failed to carry its heavy burden on both these counts. This is unsurprising, as Bionpharma's counterclaims are not based on discrete acts that could have been carried out by underlings with no involvement by officers or directors. Bionpharma alleges that Azurity has engaged in an anticompetitive scheme spanning five years and at least seven sham lawsuits that have all been about illegally thwarting competition, **not** about enforcing legitimate intellectual property rights. *See generally* D.I. 135, Bionpharma's CCLS; D.I. 255, Mem. Op. at 5-6. Bionpharma's antitrust counterclaims do not "involve merely [Azurity]'s day to day operations or something manifestly immaterial in view of the total scope of the company's overall operations, such as slip-and-fall cases or a routine claim of trademark infringement," where the apex doctrine is typically applied. *Valeant*, 2021 WL 3140030, at *10 (internal quotations omitted); *see also iPhone*, 2021 WL 485709, at *4 ("[T]his is not a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway and now seeks to depose Safeway's CEO."). Instead, Bionpharma's "lawsuit concerns important aspects of [Azurity]'s business model"—such as its decision to institute **and maintain** objectively baseless litigation—"that are plainly the result of high-level executive decisions." *iPhone*, 2021 WL 485709, at *4; *see also Valsartan*, 2021 WL 6111769, at *2 ("[T]his is not a case that raises a claim of an isolated instance of contamination; it concerns the manufacturing process that may have resulted in wholesale contamination of the product. This is the kind of case that one would expect a company's leader would be playing a leading role."). As such, "we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional." *Id*.

The self-serving declarations Azurity has filed from two of its board members (Messrs. Davenport and Edwards, *see* D.I. 323-1 Exs. 6, 7) do not detract from this, as "[a] claimed lack of knowledge, by itself . . . is insufficient to preclude a deposition." *Apple*, 282 F.R.D. at 263 (internal quotations omitted). Moreover, those declarations are undermined by documents that Bionpharma has produced in this litigation, which show Azurity's board members taking an active, hands-on role in management, including: (1) negotiating agreements with Bionpharma on behalf of its sister company, CoreRx, during the pendency of the First and Second Wave Suits, and approximately 9 months prior to the filing of the CoreRx Suits (Ex. A, BION-ESOL-00040442-56 (involving Poole and Edwards)); and (2) even attempting to negotiate settlement of the Third Wave Suits with Bionpharma on behalf of Azurity (Ex. B, BION-ESOL-00090124-25; Ex. C, BION-ESOL-00106754-55 (Edwards)). Further, the Davenport and Edwards declarations **do not** speak to their—or any other Azurity board member's—knowledge of or involvement in the First, Second, and Third Wave Suits. Indeed, Azurity does not even allege a lack of knowledge of or involvement

2

with the First, Second, and Third Wave Suits on the part of its board members.[3] D.I. 323 at 2-3. The declarations allege only that it was the CoreRx suits of which they had "no advance knowledge," and that they had determined that they "should not be involved in decisions related to the [CoreRx Suits]." D.I. 323-1 Ex. 6, Davenport Decl. ¶¶ 4-5; *see also id*. at Ex. 7, Edwards Decl. ¶¶ 4-5. Moreover, while Azurity acknowledges that it is raising a *Noerr-Pennington* defense in these suits (D.I. 323 at 2 and n.6), it wants to offer only its one preferred board member (Patel) to speak on the disputed issues of objective baselessness and subjective motivation. This is improper—Bionpharma should be permitted to probe the opinions of others in Azurity's management, who "were in a position to have obtained unique personal relevant knowledge," *Moyle v. Liberty Mut. Ret. Benefit Plan*, No. 10cv2179-DMS, 2012 WL 5373421, at *4 (S.D. Cal. Oct. 20, 2012), regarding the sprawling anticompetitive conduct that Bionpharma has alleged.[4]

## II. AZURITY'S COMPEL ORDER REQUEST SHOULD BE DENIED

Azurity's RFP Nos. 121-23 and 129 seek each and every document exchanged or filed in the SDNY action. Ex. D, 5/8/23 Bank Ltr. (Azurity's RFPs seek "all documents, produced or received by Bionpharma in the [SDNY action]; all deposition transcripts, transcripts of proceedings, and expert reports."). This is entirely too broad; it inevitably includes within its scope numerous irrelevant documents. *Compare*, D.I. 323-1, Ex. 1, Azurity RFP No. 129, *with* SDNY action D.I. 5-7 (motion to seal), 24 (scheduling stipulation), 121 (rule 26(f) report), 140-42 and 147-49 (motion to stay pending resolution of the Third Wave Suits), 210 (trial logistics). Bionpharma has already satisfied Azurity's legitimate interests by producing documents it produced in the SDNY action that are relevant to the issues in the instant suits. Azurity, however, demands more, including all transcripts and expert reports, implicating third party confidentiality issues. Precisely because of that, and to avoid any conflict with the SDNY action PO, Bionpharma advised Azurity to secure the documents it seeks from its corporate sister (CoreRx). Azurity refuses. Bionpharma has also invited Azurity to identify specific additional documents from the SDNY action it believes have relevance to the issues in the instant suits, but it has refused. Azurity's RFP Nos. 121-24 and 129 are simply too broad and disproportional to the needs of this case—particularly in view of the fact that Azurity can secure much of what it is looking for from its corporate sister, obviating any PO concerns—and include many documents that have no relevance to the issues in the instant suits. Azurity's request for an order compelling Bionpharma to produce everything from the SDNY action, and risk violating the PO there, should be denied.

---

[3] For this reason alone, Azurity's reliance on a PO issued in the SDNY action preventing Bionpharma from taking the depositions of Davenport and Edwards (D.I. 323 at 3) is misplaced. Bionpharma there sought those depositions in connection with negotiations that took place between Azurity and CoreRx to "settle" the sham CoreRx Suits, which was relevant to Bionpharma's breach-of-contract claims against CoreRx. D.I. 323-1, Ex. 4 at 14:22-15:3. By contrast, Bionpharma's antitrust claims here reach conduct far beyond Azurity's "settlement" negotiations with CoreRx—including the filing and maintenance of three waves of sham litigation against Bionpharma, and Azurity's suits against its corporate sister, which the judge in the SDNY action described as "implausible." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 179 (S.D.N.Y. 2022).

[4] Azurity's burden arguments boil down to an inconvenience arising from "tying-up all six Board Members and in-house counsel" for days. Courts in this Circuit have found similar arguments unpersuasive. *See, e.g., Tylenol*, 2014 WL 3035791, at *3.

Dated:  June 2, 2023

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Of Counsel*:

Andrew M. Alul
Luke T. Shannon
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000
aalul@taftlaw.com
lshannon@taftlaw.com
rshrestha@taftlaw.com

Aaron M. Johnson
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
612-977-8400
ajohnson@taftlaw.com

Christopher J. Kelly
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
cjkelly@mayerbrown.com

*Attorneys for Defendant Bionpharma Inc.*

4