IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BIONPHARMA INC., et al., ) <br> ) <br> Defendants. ) | C.A. No. 21-1286 (MSG) <br> CONSOLIDATED <br><br> ██████████████ <br><br> REDACTED - PUBLIC VERSION |

## AZURITY'S REPLY LETTER BRIEF TO THE HONORABLE
## MITCHELL S. GOLDBERG REGARDING DISCOVERY DISPUTE

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
Jody Karol
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Natalie J. Morgan
Evan Sumner
Granville C. Kaufman
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
San Diego, CA 92130
(858) 350-2300

Jeffrey C. Bank
Alexander Poonai
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800

June 2, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity*
*Pharmaceuticals, Inc.*

Ty W. Callahan
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

Dear Judge Goldberg:

Azurity respectfully asks the Court to deny Bionpharma's motion to compel. Apparently unhappy with the lack of evidence supporting its allegations, Bionpharma is attempting to wish into existence materials that are simply not there, and both of its issues dovetail on this point. First, without meeting and conferring (which itself is grounds for denial), Bionpharma has placed at issue approximately thirty of its RFPs to Azurity, many of which are overlapping or duplicative. But there is no ripe issue: for each request, Azurity has either produced documents or confirmed that no responsive documents exist. In other words, Azurity is not affirmatively withholding any relevant, non-privileged, and responsive antitrust-specific documents. Second, Bionpharma demands that Azurity amend its Delaware Default Standard Paragraph 3 Disclosures to add five Board Members, but, based on Azurity's representations here and the discovery from the related New York Action, Bionpharma already knows that the Board Members do not possess the evidence it hopes exists.

Briefly, Azurity responds to Bionpharma's tired accusation that Azurity has refused to comply with discovery "throughout the last year."[1] As this Court recognized in its March 27 Consolidation and Scheduling Order, the parties mutually agreed "to pause antitrust discovery during the pendency of Azurity's stay motion." D.I. 293, ¶ 29, n.2. It was on Bionpharma's motion that the Court stayed discovery until resolution of the parties' dispositive motions. *Id.*, ¶¶ 15-16. Azurity is acting diligently and complying with its discovery obligations so that fact discovery can be completed by the October 5, 2023 deadline.

## I. Azurity Has Appropriately and Adequately Responded to Bionpharma's Discovery Requests

Bionpharma's antitrust counterclaims boil down to purported sham litigation claims covering four matters. With respect to each, Azurity has produced the relevant discovery, and in total has produced over 120,000 pages in this litigation. In its letter, Bionpharma lists three categories of documents it is supposedly still seeking. Azurity has already produced any non-privileged responsive materials it possesses. For example, Azurity has produced organizational charts detailing its structure and relationship with its private equity sponsor NovaQuest, communications with CoreRx concerning the litigation and negotiation of the settlement,[2] and documents concerning the asserted patents, competition with Epaned and relevant markets, advertising, and

---

[1] Azurity also again categorically denies the allegation that NovaQuest/QHP is its "parent company" or that CoreRx is its "corporate sister." Just like Bionpharma, Azurity is one of many portfolio companies under a private equity sponsor. And just like Bionpharma had arms-length negotiations with other portfolio companies invested in by its own private equity sponsor, Azurity has too.

[2] Bionpharma obtained most of the interparty communications from CoreRx itself in the New York Action since CoreRx was a party there and Azurity was not. CoreRx has represented that it does not object to the production of "documents that may contain CoreRx's confidential information" so long as they are produced with appropriate confidentiality provisions under the protective order. Ex. 1.

The Honorable Mitchell S. Goldberg                                                                Page 2
June 2, 2023

data. To the extent Bionpharma asserts that Azurity has not, but should, produce additional materials reflecting its legal strategy (*e.g.*, D.I. 321-3, RFP Nos. 28, 64-66), Azurity determined that it has no non-privileged responsive documents.

To illustrate: Bionpharma alleges that the first suit filed against it by Azurity was a sham, and Bionpharma has all of the discovery from that matter. There is no smoking gun supporting Bionpharma's allegation that Azurity baselessly brought that suit because Azurity filed its complaint pursuant to the Hatch-Waxman framework that directs NDA holders to sue within 45 days of receiving a Paragraph IV letter, like the one sent by Bionpharma. Azurity had similar bases to sue in the second and third matters between the companies, and Bionpharma has all of the discovery needed to litigate its positions on all of the patent merits. As for the Azurity-CoreRx dispute and settlement, Bionpharma has sought discovery from both parties in its related breach of contract case against CoreRx in New York. There, Bionpharma has obtained document productions and deposition testimony from each of Azurity and CoreRx, as well as documents and testimony from a third-party customer. Bionpharma is refusing to produce such materials in this litigation (a subject of Azurity's June 1, 2023 letter brief (D.I. 323)), meaning to the extent Bionpharma claims antitrust-specific discovery is missing, Bionpharma itself is to blame.

Bionpharma's request should also be denied under Delaware Local Rule 7.1.1 because Bionpharma failed to meet and confer with Azurity on this subject. After Bionpharma, for the first time, identified thirty RFPs it (erroneously) believed were ignored by Azurity, Azurity informed Bionpharma that it was "investigating [Bion's] new issue and will revert."[3] Bionpharma then threatened to file a unilateral letter with the court and, paradoxically insisted both that Azurity call Bionpharma's counsel after 6 PM (without Delaware local counsel. As required by D. Del. LR 7.1.1), while also cancelling a previously scheduled meet and confer for the next day. D.I. 321-4 at 1. Azurity agreed to submit the joint letter while reserving its position that the issue was improperly raised. *See* D.I. 315 at 2, n.1 & 2.

In a footnote, Bionpharma dismisses Azurity's efforts to investigate its new request as "nonsensical" because it alleges Azurity "already committed to producing these documents" in its supplemental responses to Bionpharma's requests for production. D.I. 321 at 3, n.5 (emphasis omitted). That is not the case. For each of the RFPs, Azurity either stated that it would produce documents "to the extent they exist and can be located after a reasonable search" or that it would "conduct a reasonable good faith search for non-privileged documents responsive to this request to determine if any responsive documents exist." *See* D.I. 321-3. Azurity has since conducted a reasonable search and can confirm that it has produced any responsive, non-privileged documents. Thus, its document production is substantially complete. Although Bionpharma complains that "Azurity has yet to produce the bulk of the antitrust-specific documents" it seeks, Bionpharma itself has repeatedly stated "that 'discovery on the antitrust claims will greatly overlap with discovery on Azurity's patent claims" (D.I. 293, ¶ 30), and Bionpharma already has that discovery. Accordingly, its motion to compel should be denied.

---

[3] Bionpharma cited this quote in its letter brief, fn.5, but omitted the word "new," altering the meaning of that sentence. *See* D.I. 321-4 at 1-2.

The Honorable Mitchell S. Goldberg  Page 3
June 2, 2023

## II.    Azurity's Delaware Default Standard Paragraph 3 Disclosures Are Complete

Azurity disclosed six custodians in its Paragraph 3 disclosures,[4] including the Executive Chairman of Azurity's Board, Mr. Amit Patel. Mr. Patel along with another Azurity executive, are identified as individuals most likely to possess discoverable information regarding topics including Azurity's decision to bring the instant patent infringement litigation, Azurity's relationship with its private equity sponsor, its lack of a relationship with CoreRx, and the decision to sue CoreRx and subsequently settle. Azurity also disclosed its Chief Development Officer, two members of the drug development team, and a member of the government relations team. Azurity did not include any of Messrs. Nailesh Bhatt, Vern Davenport, Jeff Edwards, Frank Leo, or Dave Ritchie in its Disclosures because none have relevant, non-duplicative discoverable information. Moreover, Azurity has already produced board agendas and minutes as well as board packages reflecting any relevant information or discussions. Bionpharma has turned over the stones, and they may not like what they have found, but that does not favor allowing them to continue to root around; rather, it demonstrates that their allegations were unfounded.

In addition, as described in Azurity's opening letter, none of the Board Members are involved in the day-to-day business of Azurity, including the decision to bring any of the lawsuits described in Bionpharma's antitrust counterclaims. As the court in the related New York Action recognized, Bionpharma failed to show that Messrs. Davenport and Edwards have "any relevant knowledge." D.I. 323-1, Ex. 4 at 14:22-15:3. Bionpharma must do more than name a competitor's Board Members in a complaint to engage in a fishing expedition through their files. It must show that they are likely to possess a "significant amount of non-privileged, responsive material." Ex. 2, *United States v. Gilead Scis., Inc.*, C.A. 19- 2103-MN-CJB, D.I. 247 (D. Del. Dec. 21, 2021). Neither Bionpharma's complaint nor its letter brief explains why these individuals would have discoverable information – it simply points to their job titles. The Board Members are not appropriate custodians under Paragraph 3, and so Bionpharma's motion should be denied.

Respectfully,

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)

MED/bac
Attachments

cc:    All Counsel of Record (via electronic mail; w/attachments)

---

[4] Although the Default Standard refers to "10 custodians," "Paragraph 3(a) does not require a party to list 10 custodians if fewer than that number of persons associated with the party's case actually meet Paragraph 3(a)'s definition of 'Custodian[].'" Ex. 3, *BioDelivery Scis. Int'l Inc. v. Chemo Rsch, S.L.*, C.A. 19-444-CFC-CJB, D.I. 146 (D. Del. Jan. 30, 2020).